THOMAS HEMINGER, GERALD R. MUNGOVAN, THOMAS GRABOWSKI, ROBERT G. PUTT, DAVID RACINE *v*. THE POLICE COMMISSION OF THE CITY OF FORT WAYNE.

[No. 3-473A45. Filed July 29, 1974.]

*J. Byron Hayes,* of Fort Wayne, *Marvin S. Crell, G. Stanley*

*Hood, Tourkow, Danehy & Crell,* of Fort Wayne, for appellants.

*William F. McNagny, James M. Prickett, Barrett, Barrett & McNagny,* of Fort Wayne, *Roy S. Dale,* of Fort Wayne, for all appellees except State of Indiana. *Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, Patricia J. Gifford,* Deputy Attorneys General, for appellee State of Indiana.

HOFFMAN, C.J.—On May 25, 1972, appellants, members of the Police Department of the City of Fort Wayne, Indiana, filed a complaint in the Allen Circuit Court seeking a temporary restraining order without notice, temporary and permanent injunctions and a declaratory judgment to enjoin the implementation of IC 1971, 19-1-20-1, *et seq.,* Ind. Ann. Stat. § 48-6286, *et seq.* (Burns Supp. 1973), by appellees herein, the Police Commission of the City of Fort Wayne (Commission), and to determine the respective rights, duties and obligations of all parties.

The statutes in question provide, among other things, for the appointment of a five-member Police Commission in second class cities coming within particular population requirements. The Commission is authorized, under certain guidelines, to establish rules and regulations affecting the rating and promotion of all policemen below the rank of Captain. In short, the statutes constitute the basic framework of a police merit system.

Appellants' complaint challenged, in several respects, the constitutionality of IC 1971, 19-1-20-1, *et seq., supra,* and further alleged that Commission had acted arbitrarily and capriciously in adopting particular rules and regulations controlling the implementation of the statutes.

On May 25, 1972, the trial court ordered that appellees be temporarily restrained from implementing IC 1971, 19-1-20-1, *et seq., supra,* and on June 16, 1972, the question of the granting of the temporary injunction was tried to the court. On November 22, 1972, the trial court found for appellees, thereby

dissolving the temporary injunction. Thereafter, on January 17, 1973, the trial court, on its own motion, denied appellants' motion for a permanent injunction. On the same day, appellants filed their motion to correct errors. Such motion was subsequently overruled on February 8, 1973, and appellants thereupon filed a motion for stay of proceedings pending the outcome of this appeal. Also, on February 8, 1973, the trial court issued the requested stay and the instant appeal followed.

Appellants' argument on appeal is predicated upon two general points alternatively. They first contend that certain of the statutory provisions in question are unconstitutional as applied to them. Secondly, it is asserted that Commission, given the power to implement the merit system, acted in an arbitrary and capricious manner.

## I.

The first issue to be considered is whether IC 1971, 19-1-20-4, Ind. Ann. Stat. § 48-6286(c) (Burns Supp. 1973), which provides, in part, that seniority rights shall be valued as 40% of the promotion ratings for the first two years following the effective date of the statute is violative of equal protection guarantees.[1]

---

1. IC 1971, 19-1-20-4, Ind. Ann. Stat. § 48-6286(c) (Burns Supp. 1973), provides, in pertinent part, as follows:

"Such rules and regulations shall prescribe that the following four [4] factors shall be the basic components in rating a member of the police department, and that such rating shall determine the eligibility of all police personnel for promotion to new positions or to fill vacancies in all ranks below captain. All police personnel interested in promotion under the provisions of this act [§§ 48-6286—48-6286g] are eligible to take a written competitive examination for a rating, as hereinafter provided.

"Number 1. The grade received by a member on a written competitive examination pertaining to police work in said city.

"Number 2. The past performance record of a member of the police department.

"Number 3. *The seniority rights of a member of the police department.*

"Number 4. A personal interview by the commission.

"*Provided That for two [2] years following the effective date of this act,* the grade received on written competitive examination shall be weighted as 20 per cent of the rating; the past performance shall be weighted as 20 per cent of the rating; *all present members of the*

Appellants contend that the seniority provision of IC 1971, 19-1-20-4, *supra,* discriminates against those members of the police department, such as themselves, who have served for less than a ten-year period. It is also asserted that the provision in question is completely arbitrary and bears no relation to the purpose for which the classification is drawn.

It must be noted at the outset that when a party questions the constitutionality of a statute or an action of the Legislature, he assumes the burden of overcoming a strong presumption favoring the constitutionality of such statute or action. *Roeschlein* v. *Thomas* (1972), 258 Ind. 16, 280 N.E.2d 581.

Concededly, appellants do not purport to come within the reach of a classification currently considered to possess an inherently suspect quality; nor do they contend that the classification in question impinges upon a fundamental right. As a consequence, defendants-appellees are not required to demonstrate a compelling State interest or a *necessary* relationship between the classification and such interest. *Sturrup* v. *Mahan* (1974), 261 Ind. 463, 305 N.E.2d 877. See also: *Frontiero* v. *Richardson* (1973), 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583. Accordingly, we are not enjoined to apply the analysis mandated by the concomitant stricter standard of review. See: *Decatur Cty. R. E. Mem. Corp.* v. *Public Serv. Co. of Ind.* (1973), 261 Ind. 128, 301 N.E.2d 191; *State ex rel. Miller* v. *McDonald* (1973), 260 Ind. 565, 297 N.E.2d 826.

*police department shall be given up to 40 per cent at the inception of this act; the seniority rights of a member to be based on the number of years service, at a rate of 2 per cent for each year's service up to and including twenty [20] years shall be considered as 40 per cent of the rating.* A personal interview of the member of the police department by the commissioners shall be considered 20 per cent of the rating. Two [2] years after the inception of this law, the written competitive test shall count as forty per cent [40%] of the rating; past performance shall count as 40 per cent of the rating; seniority rights will be based on the number of years of service as a member of the police department, at the rate of ½ of 1 per cent (one-half of one per cent) for each year's service up to an [and] including twenty [20] years, and the personal interview by the commissioners shall be considered 10% of the rating. ***." (Emphasis supplied.)

Under the "traditional" standard which must be applied in the instant case, the validity of legislation is presumed despite the fact that in operation statutory provisions may give rise to some inequality. See: *San Antonio Independent School District* v. *Rodriguez* (1973), 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. Moreover, it has been stated that, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan* v. *State of Maryland* (1961), 366 U.S. 420, at 426, 81 S.Ct. 1101, at 1105, 6 L.Ed.2d 393, at 399; *Prog. Imp. Assoc.* v. *Catch All Corp.* (1970), 254 Ind. 121, 258 N.E.2d 403. Cf: *Castro* v. *Beecher* (1st Cir. 1972), 459 F.2d 725.

Although the Equal Protection Clause does not deny to the States the power to treat different classes of persons in different ways, *McDonald* v. *Board of Election* (1969), 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739; *Railway Express* v. *New York* (1949), 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533, it does, however, preclude the States from enacting legislation which accords dissimilar treatment to persons placed by statute into separate classes on the basis of criteria which bear no relation to the purpose or objective of the statute. *Reed* v. *Reed* (1971), 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225. Further, in *Royster Guano Co.* v. *Virginia* (1920), 253 U.S. 412, at 415, 40 S.Ct. 560, at 561, 64 L.Ed. 989, at 990-991, it is stated that,

"[T]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."

The present case involves a classification of individuals on the basis of seniority. Such classification applies to members of the police departments in cities qualifying under IC 1971, 19-1-20-1, *supra,* and, under the provisions of IC 1971, 19-1-20-4, *supra,* is a factor initially comprising 40% of the rating used to determine the eligibility of such individuals

for promotion. The question presented with regard to equal protection then, is whether the distinction effectuated through the application of the 40% seniority factor bears a rational relationship to a State objective that is sought to be promoted by the operation of IC 1971, 19-1-20-1, *et seq., supra.*

The statutes in question exhibit a legislative intent to avoid the effect of personal and political influence upon police promotions. In more general terms, the enactment of the statutes can be considered to stem from a desire on the part of the Legislature to supplant the uncertainty of subjective evaluation with a more systematic scheme under which eligibility for promotion is determined largely on the basis of objective criteria. In order to realize this objective, the Legislature has formulated and provided for the orderly implementation of a merit system which places emphasis upon individual experience and ability.

While any system which attempts to distinguish among personnel on the basis of pre-determined factors cannot be regarded as a panacea, such a method is superior to one which is subject to the potential of personal and political influence. The existence of competition for a desired benefit naturally portends that lines will be drawn and distinctions made. It is perhaps a hallmark of a system based upon merit that these lines and distinctions are not secreted in the minds of a handful of men but are held out for all to see, to derive motivation from and, in some instances, to challenge and improve.

Seniority often tends to divorce promotion from ability. See: *Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964,* 84 Harv. L. Rev. 1109, 1155-1157 (1971). While this appraisal would, on its face, indicate a lack of relevance between merit and seniority, it does not, however, do violence to the proposition that seniority, *per se,* is reasonably related to the purpose underlying the statutory provisions in the instant case. For, as previously noted, the legislative objective with which we are

here concerned comprehends considerably more than a mere effort to prescribe promotion criteria. Indeed, the statutes evidence a broad plan of reform designed to facilitate efficiency of personnel evaluation, provide motivation and incentive to employees and ensure an orderly transition from the old system to the new.

Seniority, in general, has been justified on the grounds that it provides an objective standard of eligibility; gives employees a degree of independence from the personal whims and preferences of their superiors; and affords employees a basis for predicting their future. See: Cooper & Sobel, *Seniority and Testing Under Fair Employment Laws: A General Approach to Objective Criteria of Hiring and Promotion,* 82 Harv. L. Rev. 1598, 1604-07 (1969). That the criterion has these effects, demonstrates its relevance and utility with regard to the purpose of the legislation. In effect, seniority constitutes an integral part of the overall scheme adopted by IC 1971, 19-1-20-1, *et seq., supra,* and could not be exercised from the formula without substantially diluting the effectiveness of the entire plan.

Two distinct features of seniority in the instant case are the relative weight accorded it and the length of the period during which such weight is prescribed. In particular, it is required that seniority comprise 40% of the eligibility rating assigned to certain department personnel for the first two years following the effective date of IC 1971, 19-1-20-1, *et seq., supra.* Thereafter, emphasis upon seniority drops significantly to 10%. This marked drop in percentage after a relatively short period is indicative of a legislative intent to facilitate the orderly implementation of the system. During the period of transition from the old system to the newly formulated merit system, the State has an interest in continuity. Relatively greater emphasis upon seniority at this time would further the State's interest yet not totally override individual ability as a basis for promotion. The expediency of this approach becomes clear

upon consideration of the potentially chaotic effect which the instantaneous application of a pure merit system would have upon the continuity of command.

So viewed, the initial percentage chosen by the Legislature and the period of its effect cannot be considered arbitrary and without rational basis. Moreover, these particular qualities of the seniority factor in the instant case constitute the results of an organized design to achieve a legitimate State objective.

## II.

Appellants point out that other cities of the second class in the State of Indiana have police merit statutes applicable to them and that none of the statutes applicable to such cities have provisions according seniority a weight approaching 40%. Appellants also observe that merit statutes applicable to other cities contain mandatory retirement age provisions but that none, other than IC 1971, 19-1-20-8, *supra,* which is applicable at present to the City of Fort Wayne, require retirement as early as age 60. It is asserted that neither the City of Fort Wayne nor the personnel of the police department possess unique characteristics which would justify such differences in treatment. This argument must be regarded as premised upon the more general contention that the statutes constitute special legislation of a character proscribed by Art. 4, § 22 of the Constitution of the State of Indiana, which provides, in pertinent part, as follows:

> "The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say: * * *.";

and Art. 4, § 23, which provides:

> "In all cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

In determining the validity of laws alleged to be special in violation of Art. 4, §§ 22 and 23, *supra,* we are required to

give the same deference to the judgment of the Legislature as was necessary in the foregoing analysis with regard to equal protection. This court may not substitute its judgment for that of the Legislature unless the classification challenged has been shown to lack substantial distinctions in the subject-matter. *Graves* v. *City of Muncie* (1970), 255 Ind. 360, 264 N.E.2d 607; *Bally et al.* v. *Guilford Twp. School Corp. etc.* (1955), 234 Ind. 273, 126 N.E.2d 13; *Perry Tp.* v. *Indianapolis Power & Light Co.* (1946), 224 Ind. 59, 64 N.E.2d 296; *State ex rel. Todd* v. *Hatcher* (1973), 158 Ind. App. 144, 301 N.E.2d 766 (transfer denied). Further, this court must, in construing the constitutionality of an Act, adopt a reasonable construction which would uphold the constitutionality of the legislation if at all possible. *Dortch* v. *Lugar* (1971), 255 Ind. 545, 266 N.E.2d 25; *Zoercher* v. *Agler* (1930), 202 Ind. 214, 172 N.E. 186.

It has also been said that the constitutional provisions referred to do not proscribe a classification of the objects of legislation provided that there exists a relationship between the classification in question and the purpose of the Act which is inherent in the subject-matter. Otherwise stated, the classification may not be purely arbitrary. *Evansville-Vanderburgh, etc., et al.* v. *Kamp* (1960), 240 Ind. 659, 168 N.E.2d 208. Further, in 82 C.J.S., *Statutes,* § 163, at 277, it is stated,

"[T]hat classification need not be scientific, harmonious, accurate, consistent, logical, or exact, as long as it will accomplish the legislative design, and the classification is not invalidated because it may result in some inequality. It is not necessary that the reason for the classification should appear on the face of the legislation. In determining the propriety of the classification, the court may resort to facts that are within its judicial knowledge, contemporaneous conditions and situations of peoples, existing state policies, and matters of common knowledge." (Footnotes omitted.)

In *Evansville-Vanderburgh, etc., et al.* v. *Kamp, supra,* at 663 of 240 Ind., at 210 of 168 N.E.2d, it is stated:

"There are many cases in Indiana which hold that population is a valid basis for classification. This is particularly true with reference to legislation pertaining to governmental organization and operation, since the size of the governmental unit has an important bearing on how its operation shall be performed, as well as its efficiency. In all classifications made by population there is always some element of arbitrariness. Yet the presence of such element does not make the legislation special if there still remains some relationship between such classification and the objective of the law which the legislature could have considered to exist."

The application of the statutes in question is circumscribed by IC 1971, 19-1-20-1, *supra,* which provides as follows:

"This chapter [§§ 48-6286—48-6286g] shall apply to any city of the second class having a population in excess of one hundred seventy-six thousand [176,000] and located in a county having a population of not less than two hundred eighty thousand [280,000] nor more than four hundred fifty thousand [450,000] according to the last preceding United States census."

The categorization at the time of the passage of IC 1971, 19-1-20-1, *et seq., supra,* clearly isolated and identified by its operation only the City of Fort Wayne, Indiana.[2] This fact alone does not, however, evidence the existence of constitutionally impermissible special legislation.

In *Graves* v. *City of Muncie, supra,* our Supreme Court was confronted with statutory provisions which are highly similar to those here in question. The legislation there in issue provided for the establishment by referendum of a merit plan for police and fire departments in certain cities. The Act further provided for a commissioner to administer the plan including the selection, promotion and discipline of members of both departments. The title of the act stated as follows:

"An act providing for a public referendum and establishing a merit plan for police and firemen in all cities of

_____

2. As of the 1970 Federal census, Fort Wayne was the only city with a population of over 176,000 in a county having a population of 280,000 to 450,000.

the second class located in counties having a population of not less than 110,000 inhabitants nor more than 120,000 inhabitants according to the last preceding United States decennial census, and prescribing penalties."[3]

Although the court in *Graves* found that the categorization clearly identified the City of Muncie, Indiana, it upheld the legislation, and, at 363 of 255 Ind., at 610 of 264 N.E.2d, the court stated that,

"A statute authorizing the creation of an authority, district or commission is not characterized as a local or special law simply because at the time of its enactment it applies but to one city. *Bailey v. Evansville-Vanderburgh Airport Authority District* (1960), 240 Ind. 401, 166 N.E.2d 520."

It is here to be noted, as it likewise was in *Graves*, that there are substantial distinctions between cases in which the classification of cities has been characterized as manifestly arbitrary or found to constitute special legislation and the case at bar.

In *Rosencranz v. City of Evansville* (1924), 194 Ind. 499, 143 N.E. 593, an Act which involved a population classification for cities from 85,000 to 86,000 was struck down because, as the court noted, only the City of Evansville would ever be subject to the terms of the Act due to the insertion in the statutes of certain mandatory dates on which particular events were to take place. See: *State Election Board v. Behnke* (1974), 261 Ind. 540, 307 N.E.2d 56. In the instant case, there has not been such an insertion of mandatory dates. An effective date for IC 1971, 19-1-20-1, *et seq., supra,* does appear in Acts 1969, ch. 309, § 9, p. 1292. However, it cannot be considered that the Legislature necessarily intended this date, June 1, 1971, to be automatically inserted where references are made, for example, to "the effective date of this act" or "this chapter" in IC 1971, 19-1-20-2, *supra;* IC 1971, 19-1-20-4, *supra;* or IC 1971,

---

3. This is the title of Acts 1963, ch. 141, which may be found in Ind. Ann. Stat., §§ 48-6260 to 48-6285 (Burns 1963 Repl.).

19-1-20-6, *supra.*[4] Moreover, these references must be regarded as pertaining to the date on which *any* city would become subject to the terms of the Act by reason of conformity with the requirements contained in IC 1971, 19-1-20-1, *supra.*

In *School City of Rushville* v. *Hayes* (1904), 162 Ind. 193, 70 N.E. 134, an Act which applied to all cities and towns having a population of not more than 4,545 nor less than 4,540 was found to be a local and special law. The court, at 201 of 162 Ind., at 137 of 70 N.E., stated:

"The possibility that other cities and towns may hereafter meet the narrow conditions of the statute is not sufficient to take it out of the prohibition of the Constitution. Its legal foundation is not more secure than if it had been declared to apply to all cities and towns bearing the name of Rushville, as shown by the last preceding census. The classification is entirely arbitrary and artificial, and the plain command of the Constitution can not be evaded by so weak and transparent a device."

In the case at bar, however, we are not confronted with a classification on the basis of population differences which are so slight as to render the Act completely arbitrary.

---

4. Acts 1969, ch. 309, § 2, p. 1286, which may be found in IC 1971, 19-1-20-2, Ind. Ann. Stat. § 48-6286a (Burns Supp. 1973), states, in pertinent part, that,

"Within thirty (30) days after *the effective date of this act,* the Police Commission for the Police Department of any city of the second class shall be appointed as hereinafter provided. ***." (Emphasis supplied.)

Acts 1969, ch. 309, § 4, p. 1289, which may be found in IC 1971, 19-1-20-4, Ind. Ann. Stat. § 48-6286c (Burns Supp. 1973), states, in pertinent part, that,

"Provided that for two years following *the effective date of this act,* the grade received on written competitive examination shall be weighted as ***." (Emphasis supplied.)

1971, P.L. 283, § 3, p. 1135, which may be found in IC 1971, 19-1-20-6, Ind. Ann. Stat. § 48-6286e (Burns Supp. 1973), provides, in pertinent part, that,

"All persons who are members of the police department of said city of the second class at the time of *the effective date of this chapter,* shall hold their respective ranks temporarily. * * * When appointing the police chief after *the effective date of this chapter,* the mayor must make that appointment from a member of the police department with a rank of not less than a sergeant. ***." (Emphasis supplied.)

There is here a rational relationship between population and legislation controlling the employment and promotion of police personnel. As the size of a law enforcement agency is reasonably related to the size and population of the area which it is made to serve, so, too, must the character of its internal organization and operation be regarded as related to the population of its particular jurisdiction. Not only must such a relationship be considered to exist as between a police department and the population within a city's corporate limits, but also the internal organization of a police department must be considered as related to the population of the area which surrounds the city. It is clear that a general law could not be constructed which would effectively control and regulate the employment and promotion of every police department in the State. A complex merit system with differentially weighted factors tailored to the needs of a particular class of communities would not be easily applicable to cities or towns of divergent size or classification.

Appellants have not succeeded in demonstrating the absence of a reasonable relationship between the classification and the statutory provisions in question. With regard to the mandatory retirement age, in particular, it is clear from an examination of the record that no evidence was introduced at trial which tends to show that the provision is arbitrary and unreasonable.

## III.

Appellants, in their brief, next assert that the mandatory retirement provisions contained in IC 1971, 19-1-20-8, *supra*, violate Art. 1, § 10 of the Constitution of the United States and Art. 1, § 24 of the Constitution of the State of Indiana regarding freedom to contract. They further contend that the retirement provisions are violative of the statutes of Indiana pertaining to age discrimination. IC 1971, 22-9-2-1 to 22-9-2-10, Ind. Ann. Stat. §§ 40-2318 to 40-2327 (Burns 1965).

These assertions, however, are not specifically set forth in appellant's motion to correct errors and must, therefore, be deemed waived for purposes of appeal under Ind. Rules of Procedure, Trial Rule 59(G). *Pope* v. *Marion County Sheriff's Merit Board* (1973), 157 Ind. App. 636, 301 N.E.2d 386; *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160; *Goshen City Court* v. *State ex rel. Carlin* (1972), 153 Ind. App. 342, 287 N.E.2d 591.

## IV.

The next question to be considered is whether certain of the provisions of IC 1971, 19-1-20-1, *et seq., supra,* are unconstitutionally vague and ambiguous. In challenging the constitutionality of the statutes on these grounds, appellants first assert that a contradiction exists between particular terms of IC 1971, 19-1-20-6, Ind. Ann. Stat. § 48-6286(e) (Burns Supp. 1973). They further assert that contradictions similar to that alleged to be present within IC 1971, 19-1-20-6, *supra,* also may be discerned upon comparison of IC 1971, 19-1-20-6, *supra;* IC 1971, 19-1-20-3, Ind. Ann. Stat. § 48-6286(b) (Burns Supp. 1973); and IC 1971, 19-1-20-4, *supra.*

Specifically, we are urged to compare statements contained in all of the statutes herein noted to the effect that regulations pertaining to eligibility for promotion do not apply to the rank of Captain with a statement contained in IC 1971, 19-1-20-6, *supra,* which provides that in order to be eligible for the rank of Captain, a member of the Police Department "shall be required to have served continuously as an active member of said department for at least five [5] years immediately preceding his appointment to captain or above, and also, Provided That he has attained the rank of sergeant through the process herein provided."

Upon a cursory examination of the provisions in question apart from their contextual support, it may appear that the Legislature has at first disclosed an intent that the statutes themselves not apply to promotions to the rank of Captain, then proceeded to formulate rules

governing promotions to the rank of Captain. This, however, is not the case. We have no difficulty in discovering a legislative intent that the specific regulations affecting rating and promotion which the Commission is authorized to establish shall not apply to promotions to the rank of Captain. This goes no further than to say that it is not within the province of the Commission to adopt regulations pertaining to the promotion of members to the rank of Captain. Such a provision cannot, therefore, be considered to contradict the terms of a provision wherein the Legislature itself has prescribed certain eligibility criteria for promotion to Captain.

In support of their argument that the statutes are void for vagueness, appellants further contend that addition of the percentages assigned to the differentially weighted factors used to arrive at an eligibility rating for members results in a total percentage of 120%. Appellants specifically refer to certain provisions contained in IC 1971, 19-1-20-4, *supra,* which state, in pertinent part, as follows:

"Provided That for two [2] years following the effective date *** of this act, the grade received on written competitive examination shall be weighted as 20 per cent of the rating; the past performance shall be weighted as 20 per cent of the rating; all present members of the police department shall be given up to 40 per cent at the inception of this act; the seniority rights of a member to be based on the number of years service, at a rate of 2 per cent for each year's service up to and including twenty [20] years shall be considered as 40 per cent of the rating. A personal interview of the member of the police department by the commissioners shall be considered 20 per cent of the rating."

It is to be noted that appellants are able to arrive at a total of 120% by considering the phrase, "all present members of the police department shall be given up to 40 per cent at the inception of this act" as a modification of the preceding statement that "the past performance shall be weighted as 20 per cent of the rating." We, however, find that it is more reasonable to regard the former phrase as a reference to the

phrase in the statute which it immediately precedes: "the seniority rights of a member to be based on the number of years service, at a rate of 2 per cent for each year's service up to and including twenty [20] years shall be considered as 40 per cent of the rating."

The validity of the latter construction is confirmed not only by the fact that the total of percentages reached thereby equals 100%, but also by the fact that a consistent ▮▮▮ interpretation has been placed upon the provisions in question by Commission in establishing rules and regulations pursuant to the statutes. An interpretation placed upon a statute by an administrative agency or, in the instant case, the Police Commission, while not controlling, must nevertheless be accorded great weight. *Sutto* v. *Board of Medical Regis. and Examination* (1962), 242 Ind. 556, 180 N.E.2d 533. Moreover, to attach any other construction to the terms would lead to an illogical and unworkable result which cannot be presumed to have been the intent of the Legislature. *In Re Adoption of Jackson* v. *Barnhill* (1972), 257 Ind. 588, 277 N.E.2d 162.

In reaching this determination we note that the particular provisions under scrutiny are not abstract or indefinite in character. Indeed, they must be regarded as extending fair notice of their import to those to whom the statutes are directed. See: *Communications Ass'n.* v. *Douds* (1950), 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925.

V.

The final issue presented is whether, in implementing the merit system, Commission acted in an arbitrary and capricious manner resulting in a denial of due process.

In particular, it is asserted that Commission acted arbitrarily in allowing only the top 100 men on the Sergeant's Eligibility List to take the Lieutenant's examination. Appellants also contend that Commission acted in an arbitrary and capricious manner in refusing to allow certain members

who were dissatisfied with their ratings thirty days in which to appeal as prescribed by IC 1971, 19-1-20-4, *supra*. Further, it is asserted that the alleged rating of one member as eligible for the rank of Lieutenant when the member did not take the written portion of the Sergeant's examination was arbitrary action on the part of Commission. Finally, appellants contend that Commission's alleged refusal to take reasonable security precautions with regard to the administration of the examinations constituted arbitrary and capricious action resulting in a denial of due process.

We point out initially that appellants' final argument concerning an alleged lack of security surrounding the tests is not contained in appellants' motion to correct errors. Such contention must, therefore, be deemed waived for purposes of appeal.

This appeal arises from a negative judgment entered by the trial court in an original action. Under such circumstances, a reviewing court may consider only that evidence which is most favorable to the judgment of the trial court together with all of the reasonable inferences to be drawn therefrom. *Gary National Bank* v. *Sabo* (1972), 151 Ind. App. 258, 279 N.E.2d 248; *Walting* v. *Brown, Extrx., etc.* (1965), 139 Ind. App. 18, 211 N.E.2d 803. Further, in *Senst* v. *Bradley* (1971), 150 Ind. App. 113, at 116, 275 N.E.2d 573, at 576, this court stated that,

"It is only where the evidence is without conflict and leads to only one conclusion and the Trial Court reached a contrary conclusion that the decision will be disturbed as contrary to law i.e. that is where it affirmatively appears that reasonable men could not have arrived at the same judgment or conclusion. See Edwards v. Wyllie, 246 Ind. 261, 203 N.E.2d 200 (1965)."

Looking to the evidence adduced at trial together with all reasonable inferences therefrom which tend to support the subsequent ruling of the trial court, we cannot say that the evidence with regard to any of the aforementioned contentions

leads to but one conclusion and that such result is contrary to that reached by the trial court.

No reversible error having been shown, the judgment of the trial court is affirmed.

Affirmed.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 314 N.E.2d 827.