J. B. HARRIS ET AL. *v.* CITY OF MUNCIE.

[No. 2-1073A216. Filed March 31, 1975.]

*Charles R. Clark, White Pierce Beasley & Gilkison,* of Muncie, for appellants.

*Darrel K. Peckinpaugh, David S. Wallace,* of Muncie, for appellee.

WHITE, J.—The City of Muncie, through its common council, adopted an annexation ordinance annexing all of Center Township of Delaware County not already within the city. Several thousand landowners in the affected area protested the proposed annexation by filing a remonstrance with the Delaware Circuit Court, a remonstrance that the City eventually stipulated to be legally sufficient to bring the matter before that Court. Several years after the remonstrance was filed a hearing was had and the remonstrance was denied.

The remonstrators have appealed from that denial, asserting that the evidence fails to establish that the city has "developed a fiscal plan and established a definite policy" to provide services to the affected area as required by IC 1971, 18-5-10-25, Ind. Ann. Stat. § 48-722 (Burns 1974 Supp.), and that some of the evidence adduced was improperly admitted.

The city contends that the statute does not require that it have such a plan when the area to be annexed meets the alternative standard set forth in its second paragraph, which is that the area "is bordered on one-fourth of its aggregate ex-

ternal boundaries by the boundaries of the city and is needed and can be used by the city for its future development in the reasonably near future." The city also argues that, although not required, the evidence does establish that it has developed such a plan and policy. Finally, it denies error in the admission of evidence.

We hold that a remonstrance against an annexation must be sustained regardless of the character of the affected area if the annexing city has not developed a fiscal plan and established a definite policy to provide services to that area. We further hold that the evidence presented to the Delaware Circuit Court did not establish that the City of Muncie had developed a fiscal plan and established a definite policy to provide services to the area it sought to annex.[1]

## I.

The statute specifying the circumstances under which a remonstrance against a proposed annexation must be sustained is IC 1971, 18-5-10-25, Ind. Ann. Stat. § 48-722 (Burns 1974 Supp.), which provides:

"The judge of the circuit or superior court shall, upon the date fixed, proceed to hear and determine the appeal without the intervention of jury, and shall, without delay, give judgment upon the question of the annexation according to the evidence which either party may introduce. If the evidence establishes that:

"(a) The resident population of the area sought to be annexed is equal to at least three [3] persons for each acre of land included within its boundaries or that the land is zoned for commercial, business or industrial uses or that sixty per cent [60%] of the land therein is subdivided; and

---

1. The trial court did not make any findings of fact or conclusions of law. Instead, an "Order and Decree", signed by the special judge, was filed. Said "Order and Decree" merely recites that evidence had been heard and then concludes: "THEREFORE, the Court hereby denies the appeal of the Remonstrators and ORDERS that the annexation . . . take place." We are therefore unable to determine whether the judgment of the court was based on a conclusion of law that a fiscal plan and policy to provide services was not required, or on a finding of fact that the evidence establishes the existence of such a plan and policy.

"(b) At least one-eighth [⅛] of the aggregate external boundaries of the territory sought to be annexed coincide with the boundaries of the annexing city; and

"(c) The annexing city has developed a fiscal plan and has established a definite policy to furnish the territory to be annexed within a period of three [3] years, governmental and proprietary services substantially equivalent in standard and scope to the governmental and proprietary services furnished by the annexing city to other areas of the city which have characteristics of topography, patterns of land utilization and population density similar to the territory to be annexed; the court shall order the proposed annexation to take place notwithstanding the provisions of any other law of this state.

"If, however, the evidence does not establish all three [3] of the foregoing factors the court shall sustain the remonstrance and deny the annexation unless the area although not meeting the conditions of factor (a) supra is bordered on one-fourth [¼] of its aggregate external boundaries by the boundaries of the city and is needed and can be used by the city for its future development in the reasonably near future, the court may order the proposed annexation to take place notwithstanding the provisions of any other law of this state. The laws providing for change of venue from the county shall not apply, but changes of venue from the judge may be had as in other cases. Costs shall follow judgment. Pending the appeal, and during the time within which the appeal may be taken, the territory sought to be annexed shall not be deemed a part of the annexing city."

Both the city and the remonstrators agree that the territory sought to be annexed herein does not satisfy any of the conditions described in factor (a), and that annexation can occur only through the exception contained in the last paragraph. The parties disagree, however, on the application of that paragraph. The remonstrators maintain that the conditions described therein should be considered as an alternative only to the conditions described in factor (a) and that the necessity of establishing factors (b) and (c) remains unchanged. The city argues that the statute provides two alternative standards for annexation, one (the lettered factors) to be applied when the land to be annexed satisfies any one of the conditions contained in factor (a), the other (the final

paragraph) to be applied when the land to be annexed satisfies none of the conditions contained in factor (a).

The language of IC 1971, 18-5-10-25, is indeed ambiguous and must therefore be construed to determine the legislative intent.

A proper approach in seeking the legislative intent of a given statute is to consider the history of law on that subject. *Merchants National Bank of Muncie* v. *Delaware School Township of Delaware County* (1916), 185 Ind. 658, 114 N.E. 450. That approach is appropriate in this particular situation.

For decades after the adoption of the 1852 Constitution annexation laws both distinguished between urbanized (denominated "platted") areas and rural ("unplatted") areas, and discouraged the annexation of rural areas. The discouragement was originally accomplished by making the procedure for annexing unplatted areas more complex,[2] and later by providing rural landowners with remedies not available to landowners in platted areas.[3] It was not until the passage of Acts of 1935, ch. 153, § 1 (an amendatory act), that both the procedure for annexation and the remedies of affected landowners were the same for platted and unplatted areas, and that parity was obtained not by relaxing the necessary conditions for annexation of unplatted lands but rather by imposing conditions on the annexation of platted land. During the same period the restrictions on a city's power to annex territory were increased.[4]

Both concepts, the division between developed and undeveloped lands and the imposition of standards that must be satisfied, were contained in the statute that was the immediate predecessor of, and repealed by, the present law.

---

2. See 1 R.S. 1852, p. 220, §§ 81, 82 and 83, and compare *Edmunds, Treasurer of the City of Terre Haute* v. *Gookins* (1865), 24 Ind. 169, with *The City of Peru* v. *Bearss* (1877), 55 Ind. 576.

3. See Acts of 1905, ch. 29, §§ 242 and 243, as originally enacted.

4. See *Arnholt* v. *City of Columbus* (1957), 128 Ind. App. 253, 145 N.E.2d 660, for a discussion of the effects of Acts of 1905, ch. 29. See also Acts of 1949, ch. 216, § 2, which reduced the percentage of affected landowners required to remonstrate.

That statute, Acts of 1955, ch. 269, § 3, as found in Ind. Ann. Stat. § 48-703 (Burns 1963 Repl.) provided in pertinent part:

"Such evidence demonstrating the presence of the following conditions shall be considered the primary determinants of the annexation's merit:

"(a) The annexation is in the best interests of the city and of the territory sought to be annexed.

"(b) The area is urban in character, being an economic and social part of the annexing city.

"(c) The terms and conditions set forth in the ordinance are fair and just.

"(d) The city is financially able to provide municipal services to the annexed area within the reasonably near future.

"(e) The area sought to be annexed, if undeveloped, is needed for development of the city in the reasonably near future.

"(f) The lines of the annexation are so drawn as to form a compact area abutting the municipality.

"If the judge of the court shall find that the primary determinants enumerated above apply to the annexation, it shall take place notwithstanding the remonstrance and notwithstanding, further, the provisions of any other statute of this state. If, however, the presence of these primary determinants cannot be demonstrated in the evidence, the annexation shall not take place."

The above statute authorized annexation of two classes of land: first, land that is urban in character, and second, undeveloped land needed for the development of the city. The conditions that had to be satisfied were the same for each class. Further, an ordinance purporting to annex land that was in part urban in character and in part undeveloped would be disapproved if the undeveloped part was not needed for the development of the city. See *Renner* v. *City of Columbus* (1972), 152 Ind. App. 206, 283 N.E.2d 428.

The similarity between the 1955 statute set out above and IC 1971, 18-5-10-25, the statute involved herein, is striking. Both authorize annexation of urbanized land, though the latter statute is more specific in its descripton of such land. Both, in almost identical language, authorize the annexation of un-

developed land that is needed for the future development of the city. Both contain as a condition the prospect of providing services to the annexed area (at least in some instances), though again the latter is more specific.

It is indisputable that under the 1955 statute the capacity for future provision of services was a prerequisite to the annexation of any land, developed or undeveloped. We see nothing in the language of IC 1971, 18-5-10-25, that would compel us to conclude that the Legislature intended to exclude undeveloped land from that prerequisite; we see nothing in the language to compel the conclusion that the Legislature intended to permit undeveloped land, land historically not amenable to annexation, to be annexed under conditions less stringent than those applied to the annexation of urbanized land.

Indeed, the langauge of the provision of services condition would induce the interpretation that it is intended to be applied in relation to undeveloped land. That condition, factor (c), requires the provision of "governmental and proprietary services substantially equivalent in standard and scope to governmental and proprietary services furnished by the annexing city to other areas of the city which have characteristics of topography, patterns of land utilization and population density similar to the territory to be annexed." The considerations specified therein, on their face, appear to be more comprehensive than the statute's rather narrow description of developed land.

One further consideration demands the conclusion that IC 1971, 18-5-10-25, provides that no land, whether urbanized or undeveloped, can be annexed unless services are to be provided. No matter how ambiguous the final paragraph of that statute might be, there can be no doubt that the Legislature intended that urbanized land could be annexed only if the city has developed a fiscal plan and policy to provide services to that area. That intent would be frustrated by an interpretation that would permit cities to

avoid compliance through careful drawing of the boundaries of the proposed annexation.

## II.

As thus interpreted, IC 1971, 18-5-10-25 (Burns 1974 Supp.) provides that a remonstrance to annexation is to be sustained unless the evidence shows, *inter alia,* that:

"(c) The annexing city has developed a fiscal plan and has established a definite policy to furnish the territory to be annexed within a period of three [3] years, governmental and proprietary services substantially equivalent in standard and scope to the governmental and proprietary services furnished by the annexing city to other areas of the city which have characteristics of topography, patterns of land utilization and population density similar to the territory to be annexed; . . ."

The appellant remonstrators argue that the above statute requires a written, formalized fiscal plan and policy, and that the uncontradicted evidence is that no such writing exists.

The appellee city maintains that the above statute does not require a written plan but instead merely requires that the evidence show the city capable of providing, and willing to provide, governmental and proprietary services, and that the evidence satisfies that requirement.

We reject the city's contention and hold both that the statute contemplates that an annexing city should have some observable and reviewable program for providing the required services and some commitment to the implementation of that program, and that the evidence in the instant case does not show that the City of Muncie had *any* fiscal plan, or definite policy, written or oral, to furnish the requisite services.

The evidence adduced by the city shows that the city was already providing some services to portions of the area to be annexed and that the city was involved in some projects that would benefit both the city and some portions of the area to be annexed.

However, the evidence shows even more clearly that the city had developed no systematic program, written or other-

wise, for the provision of governmental and proprietary services to the entire area to be annexed.

For instance, the remonstrators' witness, Elmer Cox, who was President of the Common Council of Muncie at the time the annexation ordinance was passed, stated unambiguously that at that time and for several months prior there had been informal discussions between council members on the need to provide services to the annexed area but that no fiscal plan was ever developed and no policy for providing services was established.

Even more revealing is the testimony of Mayor Paul Cooley, who on cross-examination admitted that he didn't know how many additional police would be added, that the number of additional firemen and fire stations would be determined at some time in the future on the basis of a professional study, and that extension of sewage lines into the annexed area would proceed immediately if, and only if, the City was successful in obtaining Federal funds for that purpose. His testimony as to a definite policy was as follows:

"Q. Now then, does the City Council, to your knowledge, established [sic] a definite policy to furnish the annexed territory with governmental and proprietory [sic] services substantially equivalent in standard and scope as those services now given to the old city?

"A. Yes.

"Q. That is definitely established by the City Council?

"A. Yes.

"Q. And when was that established?

"A. Oh, it was established when they set the budget last year. They set the budget.

"Q. Okay. How was that established? Was it by a written policy?

"A. It's passed in a vote after the refinement proceedings and hearings.

"Q. By a written policy they did this?

"A. Of course, they're on record as voting.

"Q. They are on record as voting. And what area was it that they established this policy?

"A. Well, in the total budget.

"Q. It was in the total budget?

"A. Right.

"Q. So that its a secret between the councilmen and no one else that what they are doing with regard to the establishing these services to the annexed area, is that right?

"A. Well, I think that you are being a little unfair when you talk about secrets. There is no secret to it.

\* \* \*"

Without deciding whether a written plan is required to satisfy the requirements of factor (c) or what should be contained in such a plan, we do hold that factor (c) is not satisfied by evidence which fails to show what measures the annexing city intends to initiate, or has already initiated, to provide the requisite services in the requisite time, and how it intends to finance its provisions of such services.[5] We further hold that such evidence must be sufficiently specific to enable the court to determine whether the proposed schedule is reasonable in itself and whether, if followed as planned, it would in fact enable the city to provide services as required.[6]

---

5. No one should read this opinion as suggesting that an annexing city or town can prove that it "has developed a fiscal plan and has established a definite policy . . ." etc. (as required by IC 1971, 18-5-10-25 (c)) without proving that such action is duly recorded in the appropriate records of the corporation. See, e.g., *Byer* v. *The Town of New Castle* (1890), 124 Ind. 86, 87, 24 N.E. 578, holding *inter alia:*

"It would be going too far to hold that a municipal corporation might prove by parol that the essential steps required to be taken, by the body representing the municipality, in proceedings to appropriate real estate had been taken, although the records of the corporation indicated nothing on the subject. . . .

\* \* \*

". . . The only competent evidence of any act or proceeding of a municipal body upon which the members of the corporate board are required to vote, is the record of the proceedings. *City of Logansport* v. *Crockett* [1878], 64 Ind. 319."

6. In 1974, subsequent to the passage of the annexation ordinance involved herein, the Indiana General Assembly enacted what is now IC 1971, 18-5-10-32.5, Ind. Ann. Stat. § 48-729a. That statute authorizes a landowner of annexed land to institute proceedings against an annexing city that fails to implement the plan for providing services. Since it is obvious that a landowner could not prove any failure to implement a plan unless he is first capable of proving the plan we conclude that the Legislature must also consider IC 1971, 18-5-10-25 (c) to require a specific, demonstrable plan.

Since the evidence presented did not establish that Muncie had developed a fiscal plan and established a definite policy to furnish the annexed portion of Center Township with the appropriate governmental and proprietary services the remonstrance should have been sustained.

In view of our decision on the previous points we need not consider the alleged errors in admission of evidence raised by appellant.

The judgment is reversed.

Sullivan, P.J., and Buchanan, J., concur.