JERRY H. YORK ET AL. *v.* THE TOWN OF CARMEL, INDIANA.

[No. 2-874A189. Filed November 24, 1975.]

*Duge Butler, Jr., Butler, Brown & Hahn,* of Indianapolis, for appellants.

*Paul G. Smith, Smith, Pearce and Barr,* of Noblesville, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Plaintiff-Appellants Jerry H. York and other land owners (Remonstrators) appeal from the trial court's denial of their Remonstrance to the annexation of certain real estate by the Defendant-Appellee Town of Carmel, Indiana (Carmel), claiming that Carmel failed to develop a fiscal plan and establish a definite policy to furnish the annexed territory, within 3 years, governmental and proprietary services substantially equivalent to those provided within Carmel, as required by IC 1971, 18-5-10-32 (Burns Code Ed.).

We reverse.

## FACTS

Careful scrutiny of the record reveals these facts and pertinent evidence:

On August 8, 1972, the Board of Trustees of Carmel (the Board) passed ten (10) annexation ordinances including C-36 and C-37, the area in question.

Ordinance C-37 annexed approximately 64 acres; while C-36 annexed approximately 219 acres, of which a Mr. Joseph Dawson owned approximately 145 acres, which he was developing (hereinafter the Dawson Subdivision).

Prior to the adoption of these ordinances, the Board discussed, prepared, and reduced to writing the annual budget for the fiscal year 1973. Although there was no specific financial projection for C-36 and C-37 as such, the 1973 budget did anticipate the needs and growth of both Carmel and the territories proposed to be annexed . . . as illustrated by a comparison of Carmel's 1972 and 1973 total budget:

Total Budgets

| | General Acct. | Plan Comm. | Police | Fire | Streets |
|------|---------------|-----------|-----------|-------------|-----------|
| 1972 | $ 91,780.00 | $46,150 | $138,955 | $162,540 | $ 78,127 |
| 1973 | $127,550.00 | $69,520 | $172,444 | $205,579.91 | $151,400 |

As of August 8, 1972, Carmel could have provided to C-36 and C-37 both fire and police protection equal to that provided to Carmel.

Carmel did not, however, have any plan concerning the streets within C-36 and C-37 other than ordinary maintenance of those streets already existing on August 8, 1972.

Carmel's Town Engineers, Fred Hohl and Fred Swift, testified that Carmel did have plans for extension of sewer and water facilities to C-36 and C-37. Funding for such services would be from (a) federal funds, (b) state funds, (c) a local bond issue, and (d) Mr. Dawson.

Fred Swift stated that "we asked our engineer which areas we could serve with our service and we only annexed the areas we were assured by the experts that we could serve within 3 years."

However, these same engineers further testified that these extension plans for water and sewer service included only the Dawson Subdivision, about ½ of the total area annexed by C-36 and C-37.

Thus Carmel's "plan" to provide sewers and water services to those persons residing outside the Dawson Subdivision left them in the position of "hooking up" at their own expense to the main sewage and water lines of the Dawson Subdivision . . . an expense that varied depending upon the needs of the persons desiring such services and the distance to the Dawson Subdivision.

Fred Hohl testified concerning Carmel's "plan" of making available, within 3 years, sewer and water services to those

persons residing outside the Dawson Subdivision, but within the annexed areas:

"Q. Your definition of availability is rather limited. It says that the water is there if the people have enough money to go far enough to get onto it.

A. That is correct, sir.

Q. In some cases we would be talking of Thousands of Dollars.

A. That is correct.

Q. If this area were annexed is it then mandatory upon the Town of Carmel or does the Town of Carmel have any plans to extend water and sewers to the property line of any of these people?

A. No, sir, only incidentally, in other words, there will be some of the properties, and unless you want to sit down and look at each house by house only speaking in generalities, some of the property will have water and in some cases sewer very close to them, perhaps in their front, right in front of their house.

Q. If they are close to the town, right?

A. Right, or any other extension.

Q. They can get on rather inexpensively?

A. That's right.

Q. But if they are not close to the line, if they come into the Town of Carmel, it's going to be up to them to run the service to get to this line.

A. That's right. That's how everyone else has got their water.

Q. And there is no plan for those people other than that plan?

A. We don't. No.

Q. If I lived six blocks from Dawson's line and I wanted his water, if I were in Carmel and I wanted your water

or wanted your sewer, I would have to run my own line those six blocks.

A. In those cases, you would.

Q. And the same would apply to the 37?

A. Yes, sir.

Q. When the people talk to you about availability, that is the availability to which you are referring?

A. Yes, sir, you do consider the availability of the sewer more in terms of the proximity of the major interceptors and, granted several blocks is quite a distance, well, it's better than five miles to the sewer plant.

Q. Would you give the Court some idea what it runs a foot to run these lines to the town sewer? Say I wanted to run it five blocks, give the Court some idea what it would cost me per foot.

A. Depend on the size of the line. Assuming an eight inch sewer which you're going to extend, somewhere between eight, twelve dollars a foot, depending upon conditions.

Q. How many feet in a block?

A. About 528 feet, we'd say.

Q. 528 feet. Let's say about five blocks, little over 2600 feet, how much per foot?

A. Use Ten Dollars for a round number.

Q. That's Twenty-six Thousand Dollars, and that's the Town of Carmel's definition of availability?

A. Yes, sir."

At least two property owners within the annexed area (Jerry York, who owned 37 acres, and Glen Thebert, who owned 15 acres), were located at least 1 mile from the Dawson Subdivision.

One alternative to minimize this overwhelming expense, according to another engineer for Carmel, Neil Schmeltekop (also Carmel's Clerk-Treasurer in 1972), would be to subdivide

one's land so as to recoup such costs. Yet Fred Hohl admitted that because of the problem of water and sewage capacity, existing at the time of trial, "a guy like York with his 38-acres" would not be able to develop his property until proposed new treatment facilities were completed.

Following the passing of ordinances C-36 and C-37, the Remonstrators filed a Remonstrance on October 13, 1972, requesting the annexation be set aside. The trial court entered judgment denying the Remonstrance, and Remonstrator's appeal.

## ISSUE[1]

The narrow issue for disposition is:

> Did Carmel comply with IC 1971, 18-5-10-32(c) by developing a fiscal plan and establishing a definite policy to furnish the annexed territory within 3 years governmental and proprietary services substantially equivalant to those furnished within Carmel?

The Remonstrators contend that the trial court's judgment, that Carmel possessed a fiscal plan and was able to provide comparable governmental and proprietary services to the annexed territory, was contrary to law.

Carmel simply answers that there was "ample evidence" to support the trial court's judgment.

## DECISION

CONCLUSION—It is our opinion that Carmel failed to comply with IC 1971, 18-5-10-32(c) because it did not establish a definite policy to furnish within 3 years sewage and water

---

1. Carmel filed a Motion to Dismiss or Affirm Judgment on November 19, 1974, claiming: (1) the Remonstrators' Motion to Correct Errors was not accompanied by a statement of facts and grounds supporting the alleged errors, as required by TR. 59(B), (2) the Remonstrators' brief was defective because the brief did not contain a verbatim statement of the trial court's judgment, as required by AP. 8.3(A)(4) [Nor is there any reference to the record, as required by AP. (A)(5).] The writer of this opinion dissented to the denial of that motion.

services to the entire annexed territories, which would be substantially equivalent to comparable services within Carmel.

As we recently decided the issue presented by this appeal in *Harris* v. *City of Muncie* (1975), 163 Ind. App. 522, 325 N.E.2d 208,[2] we see no need to plow the same ground again. *Harris, supra,* construed and reviewed the statutory history of IC 1971, 18-5-10-32(c), which is the basis of the Remonstrator's appeal:

> Requirements to be met.—Town annexation shall not be sustained on appeal unless the following requirements have been met:
>
> * * *
>
> (c) The annexing town *has developed a fiscal plan and has established a definite policy to furnish the territory to be annexed within a period of three (3) years, governmental and proprietary services substantially equivalent* in standard and scope *to the governmental and proprietary services furnished* by the annexing town *to other areas of the town* which have characteristics of topography, patterns of land utilization and population density similar to the territory to be annexed. (emphasis supplied)
>
> (hereafter Section (c))

Judge White, speaking for this court, observed that:

> Without deciding whether a written plan is required to satisfy the requirements of factor (c) or what should be contained in such a plan, we do hold that factor (c) is not satisfied by evidence which fails to show what measures the annexing city intends to initiate, or has already initiated, to provide the requisite services in the requisite time, and how it intends to finance its provisions of such services. We further hold that such evidence must be sufficiently specific to enable the court to determine whether the proposed schedule is reasonable in itself and whether, if followed as planned, it would in fact enable the city to provide services as required. *Harris, supra,* 325 N.E.2d at 214.

The City of Muncie, like the Town of Carmel, did provide some services "to *portions* of the area to be annexed", but

---

2. The *Harris* opinion was handed down March 31, 1975.

"had developed no systematic program, written or otherwise, for the provision of governmental and proprietary services to *the entire area* to be annexed." (our emphasis). *Harris, supra,* 325 N.E.2d at 213.

Without deciding whether a fiscal plan was developed, it is apparent that the evidence is without conflict and leads inescapably to but one conclusion,[3] i.e., that Carmel did not establish a "definite policy" to furnish to the entire annexed area within 3 years "governmental and proprietary services substantially equivalent" to those provided in Carmel.

Therefore the judgment of the trial court denying the Remonstrance is contrary to law and should be reversed. ·

Reversed.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 337 N.E.2d 511.

---

3. The Remonstrators appeal from a negative judgment.

It is only where the evidence is without conflict and leads to only one conclusion and the Trial Court reached a contrary conclusion that the decision will be disturbed as contrary to law, i.e., that is where it affirmatively appears that reasonable men could not have arrived at the same judgment or conclusion. See *Edwards* v. *Wyllie,* 246 Ind. 261, 203 N.E.2d 200 (1965). In this context, this Court, as a reviewing Court, will consider only the evidence most favorable to the decision of the Trial Court. See *Walting* v. *Brown,* 139 Ind. App. 18, 211 N.E.2d 803 (1965) and *Jones* v. *State,* 244 Ind. 682, 195 N.E.2d 460 (1964). *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N.E.2d 573, at 576; *See, Celanese Coating Co.* v. *Blakemore* (1975), 163 Ind. App. 433, 324 N.E.2d 268; *Heminger* v. *Police Com'm. of City of Fort Wayne* (1974), 161 Ind. App. 72, 314 N.E.2d 827; *Columbia Realty Corp.* v. *Harrelson* (1973), 155 Ind. App. 604, 293 N.E.2d 804.