Jerry L. **DRAKE**, Jacklin C. Drake, Gerald V.R. Walker, G. Francine Walker and Certain Other Persons Owning Property in the Annexed Territory, Appellants (Remonstrators and Plaintiffs),

v.

**CITY OF FORT WAYNE, Indiana,** Appellee (Respondent and Defendant).

No. 02A03–8903–CV–123.

Court of Appeals of Indiana, First District.

Sept. 28, 1989.

James A. Federoff, Thomas J. Galanis, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for appellants.

J. Timothy McCaulay, Corp. Counsel, City of Fort Wayne, Helmke, Beams, Boyer & Wagner, Fort Wayne, for appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Jerry L. Drake, Jacklin C. Drake, Gerald V.R. Walker, G. Francine Walker and certain other persons owning property in the annexed territory, (collectively, the remonstrators), appeal the decision of the Allen Circuit Court allowing the City of Fort Wayne to proceed with the annexation of certain property known as the "Villas of the Marketplace." We reverse.

## FACTS

On April 14, 1987, the Common Council for the City of Fort Wayne passed annexation ordinance No. X–01–87 which was signed and approved by the City's mayor on April 20, 1987. The territory sought to be annexed by the City was known as the "Villas of the Marketplace" which consists of 145 acres which were 76.1% contiguous to the existing boundaries of Fort Wayne and has a population of 542 persons.

On June 19, 1987, property owners in the territory set for annexation filed a remonstrance against the annexation ordinance and a complaint for declaratory judgment in the Allen Circuit Court. In June of 1988, after examining the Allen County Auditor's verification regarding the annexation remonstrance, the trial court ruled that the remonstrance had the necessary signatures under I.C. 36–4–3–11. On October 3, 1988, the remonstrators filed a motion for partial summary judgment.

In mid-October the trial court conducted a hearing on the remonstrance and on the motion for partial summary judgment. On November 22, 1988, the lower court denied the remonstrators' motion for partial summary judgment and entered judgment in favor of the City of Fort Wayne. From this decision, the remonstrators now appeal. Further facts will be revealed as necessary to the discussion.

### ISSUES

1. Did the trial court err in determining that the description of the annexed territory contained in the annexation ordinance was sufficient?

2. Did the trial court err in determining that the notices of the annexation ordinance were timely published and that the effective date of the annexation ordinance was determinable?

3. Did the trial court err in determining that the City's written annexation fiscal plan met the requirements of Indiana Code section 36–4–3–13(d)?

### DISCUSSION AND DECISION

We first note that the trial court in the present case entered special findings, not on the request of either of the parties, but on its own motion. The trial court is not required to make special findings in an annexation proceeding. *Abell v. City of Seymour* (1971), 150 Ind.App. 163, 166, 275 N.E.2d 547, 549–50. Where special findings are neither requested nor required under Indiana Rules of Procedure, Trial

Rule 52, but the trial court voluntarily enters findings, the reviewing court will consider the case as decided as a general judgment by partial findings. *McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514, 520. Such a judgment is sustainable upon any theory, if such theory is not contrary to any findings of fact. *Id.*

Furthermore, annexation is a legislative function and does not become a judicial question except on review as provided by statute. *King v. City of Bloomington* (1959), 239 Ind. 548, 560, 159 N.E.2d 563, 568. A city's authority to annex territory has been limited by statute and the courts have a duty to determine whether the city has violated its limitations, exceeded its authority, or attempted to evade and circumvent the plain intent and meaning of the statutory limitations. *Id.* In determining whether the evidence and special findings of fact are sufficient to establish the primary determinants for municipal annexation of territory, this court will not reweigh the evidence; if the evidence fails to support all of the statutory determinants, the annexation will fail. *Smith v. Town of Culver* (1968), 249 Ind. 665, 667, 234 N.E.2d 494, 496; *Renner v. City of Columbus* (1972), 152 Ind.App. 206, 209, 283 N.E.2d 428, 429.

### Issue One

Remonstrators first claim that the trial court erred in determining that the legal description of the annexed territory contained in the annexation ordinance was sufficient.[1] More specifically, the remon-

---

1. The description contained in the annexation ordinance reads as follows:

"Part of the Northwest Quarter of Section 20, and the Northeast Quarter of Section 19, Township 31 North, Range 13 East, Allen County, Indiana; more particularly described as follows, to-wit:

"Beginning at the intersection of the West right-of-way line of St. Joe Road with the South line of the Northeast one quarter of Section 19, Township 31 North, Range 13 East; thence North along the West right-of-way line of St. Joe Road to the Southwest corner of Ordinance No. X–02–76; thence following in an Easterly direction along the South line of Ordinance No. X–02–76; being the existing City Limits line, to the Southeast corner of Ordinance No. X–02–76;

thence in a Northerly direction on the East line of Ordinance No. X–02–76, being the existing City Limits line, to the South right-of-way line of St. Joseph Center Road; thence in an Easterly direction along the South right-of-way line of St. Joseph Center Road to its intersection with the East line of the Northwest quarter of Section 20, Township 31 North, Range 13 East; thence South along the East line of the Northwest quarter of Section 20, Township 31 North, Range 13 East to the South line of the Northwest quarter of Section 20, Township 31 North, Range 13 East to the South line of the Northwest quarter of Section 20, Township 31 North, Range 13 East; thence West along the South line of the Northwest quarter of Section 20, Township 31 North, Range 13 East, to its intersection with the West line of the Northwest

strators object to the repeated reference to ordinance No. X–02–76 made in the description. According to the remonstrators, because one must determine what property was annexed pursuant to ordinance No. X–02–76 in order to determine to what property the present annexation ordinance applies, the description contained in the present annexation ordinance is insufficient.

■ In support of this contention the remonstrators cite the case of *Willian v. City of Evansville* (1951), 121 Ind.App. 185, 191, 98 N.E.2d 219, 221; which states that a description will be deemed sufficient if, upon a fair and reasonable construction thereof, the boundaries of the territory to be annexed are indicated without resort to parol evidence or rules of legal interpretation. The remonstrators claim that the annexation under review fails the *Willian* test because one is required to "undertake extraordinary research and investigation to determine the boundaries of the property subject to the proposed annexation." Remonstrators–Appellants' brief at 11. While the remonstrators are accurate in asserting that reference to an outside record is necessary to determine the boundaries of the territory to be annexed in the present case, this fact does not make the description inadequate. The ordinance refers to a recorded document, not parol evidence, and in no way requires resort to the rules of legal interpretation.

Additionally, the Indiana Supreme Court has expounded on the test to be used when determining the sufficiency of the description contained in an annexation ordinance stating that, "if the territory annexed was described in the ordinance sufficiently to conform to the requirements of notice, and it is so described that it can be identified from intrinsic records by one skilled in such

matters, the description may be considered sufficient for the purpose of the particular proceedings." *Woerner v. City of Indianapolis* (1961), 242 Ind. 253, 266, 177 N.E.2d 34, 39. In its finding of fact, the trial court stated that the territory to be annexed was described in such a fashion so as to allow one who was skilled in such matters to locate the territory without reference to parol evidence, or the rules of legal interpretation. At trial, Bruce Franke, a qualified land surveyor, testified that he was able to identify the territory covered by the proposed annexation solely by reference to the ordinance and the recorded documents referred to therein. Given that the trial court's findings support the judgment, and that the evidence presented at trial supports the findings, we hold that the trial court did not err in determining that the description of the territory to be annexed as contained in the annexation ordinance was sufficient.[2]

*Issue Two*

■ Remonstrators next claim that the trial court erred in concluding that the effective date of the annexation ordinance was determinable and in concluding that notice of the annexation was timely published. We disagree.

The language of the annexation ordinance pertinent to this issue reads as follows:

"That after its passage, any and all necessary approval by the Mayor, due legal publication, and the required sixty day remonstrance period, this Ordinance shall be in full force and effect. The above described territory shall become part of the City of Fort Wayne on December 31, 1989, provided a successful remonstrance is filed, the effective date of annexation shall be thirty days after

---

quarter of Section 20, Township 31 North, Range 13 East; thence continuing West along the South line of the Northeast quarter of Section 19, Township 31 North, Range 13 East, to the point of beginning on the West right-of-way line of St. Joe Road."
Record at 163.

2. Nonetheless, we note that even the *Woerner* court voiced a desire that territory be described

with the "greatest possible clarity and certainty." 242 Ind. at 266, 177 N.E.2d at 39. While we are sympathetic to calls for a description which would enable persons of common understanding, but possessing no special skill, to determine whether or not their property was subject to an annexation proposal, we will leave the institution of such a standard to the wisdom of our General Assembly.

the termination of the appeal period after the judicial disposition of the remonstrance."

Record at 164–65. Remonstrators contend that it is unclear as to precisely which effective date the City selected. The discrepancies in the dates noted simply reflect the distinction between the effective date of an annexation ordinance and the effective date of the annexation itself. Cf. Indiana Code sections 36–4–3–7 and 36–4–3–8 (I.C. 36–4–3–8, allows a municipality to delay the effective date of the annexation, and I.C. 36–4–3–7 states that an annexation ordinance is effective (60) days after its final publication absent a remonstrance proceeding.) The trial court did not err in concluding that the effective date of the annexation ordinance was determinable.

The remonstrators also claim that the notice provisions of the annexation statute and the general publication provisions of the Indiana Code are irreconcilable. The remonstrators are mistaken. At the time relevant to this proceeding I.C. 36–4–3–7, which governs the publication of annexation ordinances, read as follows:

"After an ordinance is adopted under section 3, 4, or 5 of this chapter, it must be published in the manner prescribed by IC 5–3–1, with the first publication made within two (2) weeks after the ordinance is adopted. In the absence of remonstrance and appeal under section 11 or 15.5 of this chapter, the ordinance takes effect sixty (60) days after its final publication." [3]

The statute requires that the publication of an annexation ordinance be undertaken in a manner consistent with the general publication requirements of the State of Indiana as codified in Indiana Code section 5–3–1. The remonstrators assert, and the City concedes, that the reference to multiple publications made in I.C. 36–4–3–7 indicates that section 2(g) is the relevant provision of I.C. 5–3–1 to be followed in the present case. I.C. 5–3–1–2(g) reads as follows:

"If the event is anything else, notice shall be published two (2) times, at least one (1) week apart, with the second publication made at least three (3) days before the event." [4]

These statutes are not irreconcilable. Because the annexation ordinance will not take effect until sixty (60) days after the second publication, the second publication will necessarily always appear at least three (3) days before the effective date of the annexation ordinance. Furthermore, the effective date of the ordinance is indeterminable only until the second publication is made; the annexation ordinance will take effect sixty (60) days after this date as reflected in both I.C. 36–4–3–7 and the wording of the ordinance itself.

*Issue Three*

■ The remonstrators' final claim is that the fiscal plan adopted by the City was deficient. Under Indiana Code section 36–4–3–13(d), a city is required to produce a written fiscal plan and establish a definite policy for providing certain required services to the annexed territories. *See Stallard v. Town of St. John* (1980), Ind.App., 397 N.E.2d 648, 649. The statute specifies what information must be included in the written fiscal plan as follows:

"(d) The requirements of this subsection are met if the evidence establishes that the municipality has developed a written fiscal plan and has established a definite policy, by resolution of the legislative body, as of the date of passage of the annexation ordinance. The resolution must show:

(1) the cost estimates of planned services to be furnished to the territory to be annexed;

(2) the method or methods of financing the planned services;

(3) the plan for the organization and extension of services;

(4) that planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital ser-

---

**3.** I.C. 36–4–3–7 has since been amended.

**4.** This statute has since been amended. The relevant provision under the current version of the statute is I.C. 5–3–1–2(i).

vices normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation, and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density;

(5) that services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation, in the same manner as those services are provided to areas within the corporate boundaries that have similar topography, patters of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria; and

(6) the plan for hiring the employees of other governmental entities whose jobs will be eliminated by the proposed annexation, although the municipality is not required to hire any employees."

The remonstrators claim that the fiscal plan offered by the City in the present case was inadequate in that: (1) the fiscal plan failed to commit the City to providing the annexed territory with required services within the time constraints set forth in I.C. 36–4–3–13(d)(4) and (5); (2) the fiscal plan failed to provide full cost estimates of the services to be provided to the annexed territory; and (3) the fiscal plan measured the services to be provided to the annexed territory on a city-wide standard rather than a standard based on services to areas with similar topography, patterns of land use, and population density.

We first hold that the fiscal plan did not fail to commit the City to providing required services to the annexed territory within the time constraints stated in the statute. The remonstrators specifically claim that the fiscal plan does not reflect the City's intent to provide the annexed territory with street lights within the three (3) year statutory deadline set by I.C. 36–4–3–13(d)(5). We disagree. The section of the financial plan discussing the installation of street lights states in pertinent part:

"It is assumed that the twenty-three additional street lights will be constructed in the third year and that the operating costs will be computed as an annual operating cost from that year on.

CAPITAL COST: $18,200 (the third year)

ESTIMATED ANNUAL COSTS: $0 (the first and second year) $783.61 (the third year)."

Record at 246. This section is indicative of the City's intent to provide street lighting to the annexed area within three (3) years of the effective date of the annexation. The fiscal plan is not inadequate in terms of the statutory time requirements for providing services.

The remonstrators next claim that the fiscal plan is deficient in that the cost estimates included therein are inadequate. The remonstrators then recite for this court numerous specific examples of items not included or underestimated in the figures reflected in the fiscal plan which could alter the actual cost of providing services to the annexed territory. The remonstrators are essentially attacking the accuracy of the estimates. In so doing, the remonstrators are requesting that we reweigh the evidence; this we will not do. See *Smith*, 249 Ind. at 667, 234 N.E.2d at 496. Given that the statute provides no guidelines for determining the minimum accuracy required for these estimates and that the record reveals evidence supporting the City's estimates; the trial court did not err in finding that cost estimates were included in the fiscal plan and met the statutory requirements.

The remonstrators' final contention is that the City erred in using a city-wide standard to measure the adequacy of the services to be provided to the newly annexed territory. We agree.

I.C. 36–4–3–13(d)(4) and (5) specifically require that the services provided the annexed territory be "provided in a manner

equivalent in standard and scope to those services provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density." In the present case, the City's fiscal plan states:

> "As required by state law, the annexation area will be treated equally with other City areas, and will receive urban services in the same manner as other areas within the City. However, because the City does not employ different service standards for different areas of the City, the annexation area is compared with the service standards as they exist for the entire city."

Record at 235. In support of this policy, Pamela Holacher, witness for the City and author of the fiscal plan, testified that the City enforces uniform police and fire department response times for all sections of the City. She also testified that street maintenance, street lighting, and sewer facilities would be brought up to city-wide standards within the annexed territory.

However, Holacher also testified to the fact that in regard to police protection, in order to maintain a uniform response time throughout the City, the support structure in various sections of the city had to be varied. There was also evidence tending to show that garbage pick-up was provided for residential inhabitants of the City, and not for commercial inhabitants. Furthermore, there was some testimony as to the fact that street surfacing and repair techniques also varied throughout the City.[5] We consider this evidence to be strongly indicative of the fact that the City of Fort Wayne is not a homogeneous community. Furthermore, it is our opinion that in order to employ a city-wide standard for the purpose of determining the adequacy of services offered to annexed territory, the City would have to be of a homogeneous nature. As noted in the beginning of this opinion, a city's authority to annex territory has been limited by statute. *King*, 239 Ind. at 560, 159 N.E.2d at 569. It is the role of the reviewing court to ensure that the city does not violate those limitations. *Id.* In failing to make some showing that the services to be provided the newly annexed territory were measured against services provided to a similar area of the City, the fiscal plan fails to meet the requirements set forth in I.C. 36–4–3–13(d)(4) and (5). The trial court erred in finding that the City planned to provide services equivalent in scope to services presently provided areas within the city having similar topography, patterns of land use and population density. Where the evidence fails to support the statutory determinants, the annexation must fail. Indiana Code section 36–4–3–13(a)(2); *Smith*, 249 Ind. at 667, 234 N.E.2d at 496. Because the fiscal plan fails to evaluate the services to be provided the annexed territories according to the standard set by services provided to like sections of the City, the trial court erred in ordering the annexation of the "Villas of the Marketplace" to take place.

Reversed.

BAKER and CONOVER, JJ., concur.

---

5. We further note that the City's own stated policy on annexation requires that services provided to newly annexed territory be provided to "areas within the City which have similar topography, patterns of land utilization and population density." Record at 269.