FORUM GROUP, INC., Excepticon of Kentucky, and Guardian Development Corporation, Appellants–Plaintiffs,

v.

Wilbur A. McMICHAEL, Jean McMichael; Richard P. Jones, Auditor of Clark County, Indiana; Raymond J. Parker, Jr., as Treasurer of Clark County, Indiana, Through its Board of County Commissioners, Appellees–Defendants.

No. 10A01–9102–CV–50.

Court of Appeals of Indiana,
First District.

July 22, 1991.

John H. Sharpe, Forum Group, Inc., Indianapolis, Ronald R. Fifer, Stites and Harbison, Jeffersonville, for appellants-plaintiffs.

Daniel E. Moore, Jeffersonville, for Richard P. Jones and Raymond J. Parker, Jr.

John W. Doehrman, Jeffersonville, for Wilbur A. and Jean McMichael.

BAKER, Judge.

Plaintiff-appellants Forum Group, Inc., Excepticon of Kentucky, Inc., and Guardian Development Corporation (collectively, Guardian) appeal the trial court's judgment in favor of defendant-appellees Wilbur and Jean McMichael, Richard P. Jones, Auditor of Clark County (the Auditor), and Raymond J. Parker, Treasurer of Clark County. The issue presented for our review is whether the Auditor properly attempted to notify Guardian, the property owner, of the real estate tax sale of Guardian's property and of Guardian's right of redemption. We hold the Auditor properly attempted to give the appropriate notice, and therefore affirm the judgment of the trial court.

## FACTS

In the early 1970s, Guardian, a wholly-owned subsidiary of Excepticon, Inc., purchased five contiguous parcels of land in Clark County.[1] These pieces of property were Guardian's only substantial assets. The parcels were identified under the Clark County Auditor's key numbering system as numbers 16, 24, 25, 26, and 29. Number 29 is the subject of this dispute.

At some point in the early 1970s after the purchase of the property in question, Guardian's corporate offices were moved to 1321 Trent Boulevard in Lexington, Kentucky. Guardian's offices moved several times in the ensuing years; Guardian did not formally advise the Auditor of the address changes until 1988, when it advised the Auditor of its earlier move to Indianapolis. From the summer of 1973 until the end of 1983, Guardian leased a post office box, number 4066, at a branch office of the Lexington, Kentucky post office.

The payment of real estate taxes was apparently uneventful throughout the 1970s. In the 1980s, however, problems began to occur with number 29. For unknown reasons, the tax billing on number 29 was historically sent to the 1321 Trent Boulevard address, while the tax billings on the remaining properties were sent to P.O. Box 4066. Bills were received at these addresses, and paid by Guardian. After a 1983 penalty and the 1985 tax billings for number 29 went unpaid, however, the Auditor issued a notice of tax sale for this property in 1985. The notice was not received by Guardian; the local post office marked the notice "unclaimed" and "out of business" and returned it to the Auditor.

The McMichaels purchased the property in question in August of 1985. A notice of redemption was sent to the 1321 Trent Boulevard address in 1987, but Guardian did not receive it. When no action was taken by Guardian, the McMichaels received a tax title deed to the property.

Guardian filed an amended complaint in April of 1990, seeking a declaration that the tax title deed was void, and seeking to quiet title to the property in Guardian's name. After a bench trial, the trial court entered extensive findings of fact and conclusions of law in favor of the defendants. Guardian now appeals.

## DISCUSSION AND DECISION

Our standard of review is well settled. Because this was a bench trial and the court made findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly errone-

**1.** In 1981, Excepticon was merged into Mutz Corporation and the resulting entity was named Forum Group, Inc. Guardian was then made a wholly-owned subsidiary of Excepticon which was itself a wholly-owned subsidiary of Forum.

ous. *Craig v. ERA Mark Five Realtors* (1987), Ind.App., 509 N.E.2d 1144; Ind. Trial Rule 52(A). The trial court entered extensive and thoughtful special findings and conclusions on its own motion. Because special findings were neither requested nor required, we will sustain the trial court's judgment on any theory which is supported by the facts. *Drake v. City of Fort Wayne* (1989), Ind.App., 543 N.E.2d 1145, *trans. denied.*

In Indiana, when a taxpayer fails to pay the amount of taxes due on real property, the county auditor may offer the property for sale. The auditor must give notice of the sale to the property owner by certified mail at the owner's last known address, and must certify on a tax sale record that the prescribed notice was given. IND. CODE 6–1.1–24–4.[2] If the delinquent tax is not paid by the property owner, the property is put up for auction to the highest bidder with some restrictions on the sale price. IND.CODE 6–1.1–24–5. Upon payment of the purchase price, the county auditor issues a certificate of sale to the purchaser. If the property is not redeemed by its former owner within two years after the certificate of sale is issued, the county auditor will issue a tax deed to the property to the purchaser. IND.CODE 6–1.1–25–4.[3] Prior to the issuance of the tax deed, the county auditor must give notice of the availability of redemption to the former owner. IND.CODE 6–1.1–25–6.[4]

A person may defeat the title conveyed by a tax deed executed in the above manner only under certain circumstances. One of these circumstances is when the property owner was not given notice of the sale and redemption in the manner prescribed by the statute. IND.CODE 6–1.1–25–16(7). Guardian does not contend the Auditor failed to comply with the statutory notice provisions, but rather argues the Auditor failed to fulfill a separate constitutional obligation to use reasonable diligence to identify a viable mailing address for Guardian. Guardian relies on *Elizondo v. Read* (1990), Ind.App., 553 N.E.2d 849, *trans. pending*, to support this proposition.

In *Elizondo*, this court noted due process requires that a state provide notice reasonably calculated under all the circumstances to apprise the interested parties of the pendency of an action prior to taking steps which will affect a protected interest in life, liberty, or property. The *Elizondo* court held the county auditor has an affirmative duty to use reasonable diligence to ascertain the property owner's current address after notice sent to the property owner's last known address is returned. *Id.* A certified mailing to the property owner's last known address as required by IND.CODE 6–1.1–24–4 was constitutionally inadequate when the mail was returned by the post office, and the correct, current address was available to the auditor in its own records. *Id.*

As noted above, *Elizondo* is pending transfer to our supreme court.[5] Other cases with facts similar to those in the case at hand have not had occasion to recognize

**2.** At the time of the events in question, IND. CODE 6–1.1–24–4(a) provided in part: "In addition to the notice required by section 3 of this chapter [posting and publication], the county auditor shall send a notice of the sale by certified mail to the owner or owners of the real property *at their last known address*." (Emphasis added).

**3.** The statute now requires the property to be redeemed within one year of the issuance of the certificate of sale. *See* 1987 Ind. Acts Pub.L. No. 89–1987 § 5. The two-year time period was in effect at the time of the sale at issue, however.

**4.** This statute was repealed by 1989 Ind. Acts Pub.L. No. 83–1989 § 18, effective May of 1989. *See* IND.CODE 6–1.1–25–4.5 for the new language which requires the purchaser to give notice by certified mail to the owner's last address or by publication if the address cannot be located by diligent inquiry. IND.CODE 6–1.1–25–6 was in effect at the time of the sale in question, and is applicable to this case.

**5.** *Elizondo* relied on two United States Supreme Court cases, both of which concerned the constitutionality of notice by publication. *Mennonite Bd. of Missions v. Adams* (1983), 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180; *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. Neither case concerned to what extent an entity must search for a correct address when the address the entity initially used for notification purposes was no longer valid.

the constitutional duty found in *Elizondo*. *See Holland v. King* (1986), Ind.App., 500 N.E.2d 1229 (holding notice to a property owner of a pending tax sale by certified mail at his last known address is a means of notice reasonably calculated to apprise the owner of the sale); *Clark v. Jones* (1988), Ind.App., 519 N.E.2d 158 (holding the notice statutes and constitutional due process requirements do not impose upon the auditor a duty to search for an alternative address). Even under the strict standard enunciated in *Elizondo*, however, the notice in this case was not deficient.

■ Guardian argues the Auditor could have identified the key numbers of all parcels owned by Guardian in Clark County, obtained the mailing addresses for each parcel, discovered that Box 4066 was the mailing address for the adjacent parcels, discovered that one of the adjacent parcels had used the Trent Boulevard address sometime prior to 1983, and thus sent the notice for number 29 to the Box 4066 address.[6] Alternatively, Guardian contends that, with diligence, the Auditor could have discovered a different address by looking at records received in the Treasurer's office which showed the taxes on all parcels had been paid with a single check in 1986 issued by Excepticon–Lexington, c/o Excepticon of Indiana, and bearing an Indianapolis address. This different address consisted of a sticker of unknown origin attached to a tax bill paid in 1986 received in the Treasurer's office. Guardian argues this sticker should have demonstrated an alternative address although the sticker contained the name Excepticon rather than Guardian, the address was located in Indiana as opposed to Kentucky, and it was not known who put the sticker there on the tax bill. We do not read *Elizondo* to require that the Auditor make such tenuous connections in order to find the property owner's current location. In *Elizondo*, the Auditor had in its office personal property

records bearing the current address of Urbano Elizondo, the same name as on the property tax records, and the Elizondos were in the local phone book, in the same location as the Auditor. That is not the case here.

In *Elizondo*, this court stated "[A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *Id.* at 851, quoting *Mennonite*, 462 U.S. at 801, 103 S.Ct. at 2713. Likewise, the State's constitutional obligation should not completely relieve the property owner of its statutory obligation to keep its address current in the auditor's office. *See Holland, supra* (stating the legislature placed a duty upon the property owner to inform the auditor of his current address). Guardian made no efforts to notify the Auditor of its address changes. It is undisputed that the Auditor complied with the statutory notice requirements. The notice to Guardian's last known address was constitutionally sufficient because Guardian's Indianapolis address was not reasonably ascertainable, and could not have been ascertained by reasonably diligent efforts. *See Elizondo, supra* (stating the notice to owner's last known address was constitutionally sufficient in *Holland* when Holland made no showing his new address was reasonably ascertainable). The judgment of the trial court was not clearly erroneous, and we uphold the trial court's decision.

Judgment affirmed.

ROBERTSON, J., concurs.

MILLER, J., concurs in result.

---

**6.** This post office box was no longer maintained by Guardian after December of 1983, although testimony indicated Guardian did receive some mail there after that date.