**CITY OF HOBART, INDIANA,**
**Appellant (Defendant**
**Below),**

v.

**Jeffrey L. CHIDESTER, et al., Appellee**
**(Plaintiffs Below).**

**No. 45S04–9208–CV–610.**

Supreme Court of Indiana.

Aug. 6, 1992.

Debra Lynch Dubovich, Highland, James A. Greco, Merrillville, for appellant.

Jo Angela Woods, President, Indiana Mun. Lawyers Ass'n, Virgil L. Beeler, Baker & Daniels, Indianapolis, Richard L. Hill, Paul J. Peralta, Baker & Daniels, South Bend, for amicus curiae Indiana Mun. Lawyers Ass'n.

Richard Mayer, Merrillville, for Appellee.

ON CIVIL PETITION TO TRANSFER

SHEPARD, Chief Justice.

This appeal presents questions about what evidence a trial court may consider in proceedings contesting municipal annexations. It has been about twenty years since this Court last spoke on the subject.[1] During these decades, both the statutes and case law in this area have continued to evolve. We grant transfer to address certain issues of statutory interpretation which have developed since our last visit.

*I. Case History*

This case arose after the City of Hobart adopted ordinances to annex certain adjacent and contiguous portions of Ross Township. Jeffrey L. Chidester and a number of landowners from the annexed area objected

to the annexation and filed a complaint against the annexation ordinance. The trial court heard ten days of evidence and arguments in May and June 1990. On July 11, 1990, the trial court entered findings of fact and conclusions of law. It found for the city on some of the points in contention but sustained the remonstrance on grounds that the city's fiscal plan did not set out which areas in the city were similar in topography, patterns of land use, and population density to the annexed area. While there was extensive evidence offered during trial about these comparisons, the trial court apparently felt obliged by *Drake v. City of Fort Wayne* (1989), Ind.App., 543 N.E.2d 1145, to decide the case without reference to that evidence. The trial court's findings did not indicate whether the evidence presented at the hearing was insufficient to show these comparisons, or whether the services proposed for the annexed territory would not be equivalent to services provided in Hobart. The Court of Appeals affirmed. *City of Hobart v. Chidester* (1991), Ind.App., 582 N.E.2d 457.

*II. Evolution of Indiana Annexation Law*

The framework of Indiana's annexation law has long featured three basic stages: (1) legislative adoption of an ordinance annexing of certain territory and pledging to deliver certain services within a fixed period, (2) an opportunity for remonstrance by affected landowners, and (3) judicial review. Earlier versions of the statute did not require the city to set out in writing its plan for providing services; it was sufficient that the city present evidence at the trial court's hearing on remonstrance to show that the statutory preconditions to annexation (sometimes called the primary determinants) had been met. *See, e.g.,*

---

1. Only a few cases even involved annexation requirements. *See In re City of Mishawaka* (1972), 259 Ind. 530, 289 N.E.2d 510 (trial court finding that certain portions of annexation statute were unconstitutional did not invalidate entire statute); *Elberfeld v. Annexation of Certain Territory of Elberfeld* (1973), 260 Ind. 499, 296 N.E.2d 653 (statute requires annexed area be both "abutting" and "contiguous"). For cases

dealing with other aspects of annexation, see *City of Whiting v. City of East Chicago* (1977), 266 Ind. 12, 359 N.E.2d 536 (dispute over landfilled territory governed by principle of acquiescence in assumed boundaries); *Board of Trustees v. City of Fort Wayne* (1978), 268 Ind. 415, 375 N.E.2d 1112 (standing and subject matter jurisdiction).

Burns' Ind.Stat.Ann. § 48–702 (1963)[2]; Burns' Ind.Stat.Ann. § 48–722 (Supp.1974), Ind.Code § 18–5–10–25.[3]

The courts which were hearing annexation remonstrances, however, began to feel the need for a more tangible description showing what measures the annexing city intended to initiate to provide the required services. In *Harris v. City of Muncie* (1975), 163 Ind.App. 522, 325 N.E.2d 208, the Court of Appeals considered whether a city must adopt a written plan. Not quite willing to say that the statute so required, the Court held that the city should have "some observable and reviewable program for providing the required services." *Id.* 325 N.E.2d at 213. To satisfy this requirement, evidence showing the adequacy of the city's fiscal plan (of factor (c), the predecessor of present (d)(4) and (5)), must be "sufficiently specific to enable court to determine whether the proposed schedule is reasonable and whether it would enable the city to provide services as required." *Id.* at 214. In 1979, the General Assembly amended the statute by adding a requirement that the city develop a written fiscal plan showing that the primary determinants were met. Ind.Code Ann. § 18–5–10–25 (Burns Supp.1980). That same year the Court of Appeals finally held that the former statute required city to offer into evidence at the remonstrance hearing written records reflecting its fiscal plan. *Stallard v. Town of St. John* (1979), Ind.App., 397 N.E.2d 648.

▬ Although the annexation statutes have gone through many changes over the years, certain general propositions of law continue to apply. The statutes invest exclusive authority to annex territory in the governing body of a municipality. *City of Aurora v. Bryant* (1960), 240 Ind. 492, 165 N.E.2d 141. Annexation is a legislative function and becomes a question subject to judicial cognizance only upon review as provided by statute. *City of Indianapolis v. Wynn* (1959) 239 Ind. 567, 157 N.E.2d 828. Indeed, to the extent annexation statutes have seemed to require courts to make determinations of a non-judicial nature, courts have refused, finding themselves to be without the power to do so under the separation of powers clause of the Indiana Constitution, Art. 3, § 1. *See, e.g., In re City of Mishawaka* (1972), 259 Ind. 530, 289 N.E.2d 510. The court is not authorized to act unless a remonstrance is filed; if a remonstrance is not filed, the annexation becomes effective. *Wynn*, 239 Ind. 567, 157 N.E.2d 828. The effect of filing a remonstrance is to abate the culmination of the annexation pending review in the courts, where the burden is on the munici-

---

**2.** The primary determinants of the annexation's merit were:

    (a) The annexation is in the best interests of the city and of the territory sought to be annexed.

    (b) The area is urban in character, being an economic and social part of the annexing city.

    (c) The terms and conditions set forth in the ordinance are fair and just.

    (d) The city is financially able to provide municipal services to the annexed area within the reasonably near future.

    (e) The area sought to be annexed, if undeveloped, is needed for development of the city in the reasonably near future.

    (f) The lines of the annexation are so drawn as to form a compact area abutting the municipality.

Burns' Ind.Stat.Ann. § 48–702.

**3.** Although no longer termed primary determinants, the statute required evidence at the hearing to establish that:

    (a) The resident population of the area sought to be annexed is equal to at least three [3] persons for each acre of land included within its boundaries or that the land is zoned for commercial, business or industrial uses or that sixty percent [60%] of the land therein is subdivided; and

    (b) At least one-eighth [⅛] of the aggregate external boundaries of the territory sought to be annexed coincide with the boundaries of the annexing city; and

    (c) The annexing city has developed a fiscal plan and has established a definite policy to furnish the territory to be annexed within a period of three [3] years, governmental and proprietary services substantially equivalent in standard and scope to the governmental and proprietary services furnished by the annexing city to other areas of the city which have characteristics of topography, patterns of land utilization and population density similar to the territory to be annexed; the court shall order the proposed annexation to take place notwithstanding the provisions of any other law of this state.

Burns' Ind.Stat.Ann. § 48–722.

pality to sustain the annexation by showing that it has complied with the requirements of the statute. *Id.* Because the city's authority to annex territory is limited by statute, the court's duty is to determine whether the city has exceeded its authority and met the conditions imposed by the statute. *King v. City of Bloomington* (1959), 239 Ind. 548, 159 N.E.2d 563; *Bryant,* 165 N.E.2d at 147.

### III. The Present Requirements for Fiscal Plans

■ Municipal annexation is today governed by Indiana Code Ann. §§ 36–4–3–1— 36–4–3–22 (West 1983 & Supp.1991). The focus of this litigation has been on the interpretation of Ind.Code § 36–4–3–13(d) which states:

The requirements of this subsection are met if the evidence establishes that the municipality has developed a written fiscal plan and has established a definite policy, by resolution of the legislative body, as of the date of passage of the annexation ordinance. The resolution must show:

(1) the cost estimates of planned services to be furnished to the territory to be annexed;

(2) the method or methods of financing the planned services;

(3) the plan for the organization and extension of services;

(4) that the planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation, and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries that have similar topography, pattern of land use, and population density;

(5) that services of a capital nature, including street construction, street lighting, sewer facilities, water facilities, and storm water drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation, in the same manner as those services are provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density, and in the same manner consistent with federal, state, and local laws, procedures, and planning criteria;

(6) the plan for hiring the employees of other governmental entities whose jobs will be eliminated by the proposed annexation, although the municipality is not required to hire any employees.

This controversy centers around the language in subsections (d)(4) and (5) requiring that services provided to the annexed area be like services "provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density". Ind.Code § 36–4–3–13(d)(4),(5). Plainly, the statute requires the city to spell out what services it plans to provide to the annexed area. The issue is whether the comparisons between the annexed area and areas of the city with similar topography, patterns of land use, and population density must be set out in the plan and resolution[4], or whether it is sufficient to prove at trial that such comparisons were made. The city argues that the statute requires only that it set out a definitive policy to provide equivalent services and that the comparisons may be shown at trial. The remonstrators argue that such an interpretation would permit a resolution to be found sufficient if it merely recites the statutory language.

■ We assess the legislature's requirement of a written fiscal plan as having three purposes. First, the publication of a written plan permits landowners to make an intelligent decision about whether to

**4.** The statute states "The *resolution* must show . . .", however, it is sufficient for the resolution to incorporate by reference the contents of the plan as the city did in this case. Our use of the term "plan" in this opinion assumes a plan which has been incorporated into a resolution.

accept annexation or remonstrate. Second, requiring a written plan makes the opportunity for remonstrance and judicial review more realistic. As a practical matter, more than vague promises are needed for a court to test a city's ability to provide like services to the annexed territory. Third, a fiscal plan needs to be in writing to protect the right of landowners to institute proceedings to force an annexing city to provide the services promised under the plan. *Sedlak v. Town of St. John* (1980), Ind.App., 403 N.E.2d 1126.[5] If a written plan were not required, a landowner could be faced with attempting to establish the failure of a plan whose existence he might be incapable of proving in the first place. *Id.* Therefore, the plan must be sufficiently specific to enable the landowners to determine whether the services promised have been provided. *Cf. Harris v. City of Muncie*, 163 Ind.App. 522, 325 N.E.2d 208.

The main concern of Ind.Code § 36-4-3-13(d)(4) and (5) is ensuring that services provided to the annexed territory are equivalent to services existing in the city. The qualification in (d)(4) and (5), that services be equivalent to those in the city with "similar topography, patterns of land use, and population density", provides a guidepost for cities in determining what services should be provided to the annexed territory. It would be unreasonable to require the city to provide services to the annexed territory that are not needed because of differences in topography, patterns of land use, and population density. For example, storm drains may be provided in neighborhoods which are very flat and have no natural drainage; such drains are not often provided in areas where the topography provides natural drainage. The idea is to provide like services to like areas.

Remonstrators are correct in that the plan must be more than a mere recital of the statutory language. We do not think, however, that comparisons between the city's topography, patterns of land use, and population density and those of the annexed territory need be set out in the plan itself. Such comparisons would do little to advance the ability of landowners to enforce their rights to services under the plan. In addition, the comparisons are most helpful to the evaluation of whether the services promised to the annexed territory are equivalent to services provided in the city, a determination the trial court must make at the remonstrance hearing. The statutes do call upon the trial court to determine whether the city's written resolution and plan are according to statute, but they also tell the court to "enter judgment on the question of the annexation according to the evidence which either party may introduce." Ind.Code § 36-4-3-12(a)(2) (West Supp.1991). Evidence that topography, land use, and population density comparisons were made when the city decided what services to provide to the annexed territory is a proper part of that evidence.[6]

The trial court felt itself constrained by *Drake*, 543 N.E.2d 1145, to require that comparisons based on topography, land use, and population density be set out in the plan itself. *Drake* appeared to hold that evidence on this point should be ignored.

There would be no need for an evidentiary hearing, however, if all proof of a city's ability to provide like services had to be set out in the written plan. We cannot read legislative intent as requiring the courts to ignore the evidence adduced at the hearing. *See* Ind.Code Ann. § 36-4-3-12(a)(2) (West Supp.1991). The decision in *Drake* seems to so require, and it is hereby disapproved.

## VI. Conclusion

The trial court's findings on much of the remonstrance were unchallenged on appeal

---

5. *See* Ind.Code § 36-4-3-16 (West Supp.1991).

6. The trial court found that the fiscal plan failed to set forth areas in Hobart similar to the proposed annexed area in topography, patterns of land use, and population density with respect to a number of the statutory requirements. Findings of Fact 13-20. There was, however, evidence offered at trial by both sides showing such comparisons. E.g., Record at 1120-25, 1139-40, 1386-88, 1394-99, 1409-11, 1413-25, 2646-47.

and they therefore stand.[7] The trial court should not have been obliged, as it thought *Drake* commanded, to ignore the evidence at trial about the adequacy of the city's fiscal plan. We therefore vacate that portion of the trial court's ruling and remand to the trial court for reconsideration in light of all the evidence.

DeBRULER, DICKSON, and KRAHULIK, JJ., concur.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion. I believe the case of *Drake v. City of Fort Wayne* (1989), Ind.App., 543 N.E.2d 1145 discussed in the majority opinion was decided correctly. I also believe the trial court in this case correctly followed *Drake* and the statute involved.

To say that it is not necessary for the City to set forth its capability to provide services within the proposed annexation in its resolution and plan, but only to do so in the evidence presented before the court in the hearing on the remonstrance, leaves the remonstrators without adequate information upon which to base their case.

The majority observes that if the City were required to set forth all of this information within its resolution and plan, there would be no necessity for an evidentiary hearing. I cannot agree with this observation. It certainly would be appropriate for remonstrators to present evidence that the proposals in the City's plan were unrealistic and the statements in the plan concerning topography, etc. were not accurate. For example, engineers could be called as expert witnesses to demonstrate that the City's presumptions on topography were grossly in error.

I do not perceive it to be an unconscionable burden upon the City to set forth all of the statutory requirements in its resolution and plan. Absent this information, the residents of the proposed annexation area can engage only in a guessing game as to what the City actually is proposing prior to the presentation of evidence at the hearing on the remonstrance.

I would affirm the trial court.

---

7. The only challenge on appeal is to the court's denial of the city's motion to dismiss for lack of jurisdiction. The Court of Appeals properly held against the city on this claim and we summarily affirm their determination. Ind.App. Rule 11(B)(3).