**Lanny ROGERS and Carolyn Rogers, Dennis Peterson and Nancy Peterson, John D'Amico and Michelina D'Amico, Together with the remaining Property Owners who are Signatories Hereto and who are in the Caption of this Complaint, Appellants–Plaintiffs,**

v.

**The MUNICIPAL CITY OF ELKHART, Indiana, Appellee–Defendant.**

No. 20A03–9501–CV–13.

Court of Appeals of Indiana.

Sept. 26, 1995.

Rehearing Denied Dec. 4, 1995.

John C. Hamilton, Don G. Blackmond, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, for appellants.

Paul D. Eash, Elkhart, for appellee.

## OPINION

STATON, Judge.

Lenny Rogers, et al., ("Remonstrators") appeal the trial court's approval of Annexation Ordinance No. 4066 ("Ordinance"). Remonstrators raise four issues on appeal, which we consolidate into two and restate as follows:

I.  Whether the trial court erred in concluding that the annexed territory was subdivided.

II. Whether the trial court erred in concluding that the annexed territory was zoned for business, commercial, or industrial uses.

We reverse.

The record reveals the following facts. The City of Elkhart ("Elkhart") enacted the Ordinance, effective June 25, 1992, concerning 439.3 acres ("439 acres") of land in Cleveland Township, Elkhart County. Pursuant to statutory requirements, Elkhart adopted a written fiscal plan concerning the 439 acres.

Remonstrators filed a complaint opposing annexation. After a hearing, the trial court issued a judgment approving annexation, which it summarized as follows:

In summary, the court finds that the evidence here shows the following provisions of I.C. 36–4–3–13 have been met, except with respect to (b)(2)(A):

(b)(1) The territory is contiguous to the municipality over at least 25% of the boundary of the annexation territory....

(b)(2)(A) The population density of the territory is *not* at least 3 persons per acre....

(b)(2)(B) At least 60% of the territory is subdivided.

(b)(2)(C) The territory is zoned for commercial, business, or industrial uses, even though slightly less than 7% of the area is zoned residential.

It is necessary that for the annexation to be approved that, if subsection (b) is relied upon, at least one of the paragraphs (2)(A), (2)(B) or (2)(C) be met. Here two of them are met: (B) and (C).

\*    \*    \*    \*    \*    \*

### JUDGMENT

It is therefore ORDERED that the annexation by the City of Elkhart under its Ordinance No. 4066, take place forthwith, and that the remonstrator-plaintiffs' appeal of that annexation be, and it hereby is DISMISSED.

Record, pp. 75–77. Remonstrators appeal.

■ We first note our standard of review. We are limited to determining whether the evidence is sufficient to meet the requirements for municipal annexation. *City of Hobart v. Chidester* (1992), Ind., 596 N.E.2d 1374, 1376–77. If the evidence fails to satisfy the statutory requirements or we conclude that the city has violated the statutory annexation limitations, exceeded its authority, or circumvented the intent of the statutory limitations, the annexation will fail. *Id.*

This case turns on an interpretation of the statutory annexation requirements. The statute, in relevant part, reads as follows:

Section 13. (a) At the hearing under section 12 of this chapter, the court shall order a proposed annexation to take place if:

(1) The requirements of either subsection (b) or (c) are met; and

(2) The requirements of subsection (d) are met.

(b) The requirements of this subsection are met if the evidence establishes:

(1) That the territory sought to be annexed is contiguous to the municipality; and

(2) That either:

(A) The resident population density of the territory sought to be annexed is at least (3) persons per acre;

(B) *Sixty percent (60%) of the territory is subdivided;* or

(C) *The territory is zoned for commercial, business, or industrial uses.*

(c) The requirements of this subsection are met if the evidence establishes:

(1) That the territory sought to be annexed is contiguous to the municipality as required by section 1.5 of this chapter, except that at least one-fourth (¼), instead of one-eighth (⅛), of the aggregate external boundaries of the territory sought to be annexed must coincide with the boundaries of the municipality; and

(2) That the territory sought to be annexed is needed and can be used by the municipality for its development in the reasonably near future.

IND.CODE § 36–4–3–13 (1988), (emphases added). Though the trial court held that the requirements of subsection (c) were met, Elkhart did not present evidence on this subsection at trial and does not argue its applicability on appeal. Further, remonstrators do not dispute that Elkhart met the requirements of subsection (d) (fiscal plan) or subsection (b)(1) (contiguity). Finally, Elkhart does not dispute that the population density of the 439 acres was less than three persons per acre. As such, our review turns on an interpretation of subsections (b)(2)(B) and (C). If the evidence is sufficient to satisfy either of these requirements, we must affirm the trial court's order of annexation.

### I.

#### *Subdivided*

■ Remonstrators first argue that Elkhart failed to present sufficient evidence to support the trial court's conclusion that the 439 acres are at least sixty percent "subdivided" under I.C. § 36–4–3–13(b)(2)(B). The definition of subdivided under our annexation statute is an issue of first impression. Article I.C. 36–4 does not define the term and neither party has cited to, nor has this court found, any cases defining the term.

■ We construe statutes to ascertain and give effect to the legislative intent expressed in the statute. In so doing, we consider the objects and purposes of the statute as well as the effect and consequences of such interpretation. *State v. Windy City Fireworks, Inc.* (1992), Ind.App., 600 N.E.2d 555, 558, *adopted on transfer* (1993), Ind., 608 N.E.2d 699. When interpreting the words of a single section of a statute, we construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215, 218, *trans. denied.* We presume that the legislature intends this court to apply language in a logical manner consistent with the statute's underlying policy and goals. *Id.* Also, we endeavor to give words their plain and ordinary meaning absent a manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth* (1992), Ind.App., 590 N.E.2d 154, 157, *trans. denied.*

■ Accordingly, we must first consider the annexation scheme as a whole in an effort to ascertain its purpose. To annex a territory, a municipality must satisfy the requirements of either subsection (b) or subsection (c). I.C. 36–4–3–13(a)(1). Subsection (c), not at issue in this case, allows annexation when: (1) one-fourth of the territory's external boundaries are contiguous to the municipality's boundaries, and (2) the municipality needs the territory for development. I.C. 36–4–3–13(c). This subsection allows a municipality to assume jurisdiction over a nearby contiguous territory which the municipality needs, regardless of the present use which the territory serves.

■ Subsection (b) allows annexation when a contiguous [1] area evidences an urban character. *See* Laurie Reynolds, *Rethinking Municipal Annexation Powers,* THE URBAN LAWYER, Spring 1992, at 276. A territory is subject to annexation if it has, in fact, become part of the nearby municipality and, thus, the residents therein should not evade the accompanying municipal responsibilities.[2] The territory's urban character is evidenced by: (A) dense population, (B) subdividing, or (C) zoning for business, commercial, or residential use. *Id.;* I.C. 36–4–3–13(b)(2).

Thus, the statute permits two independent methods of annexation. A municipality may annex a closely contiguous territory for which it has a need under subsection (c) or a less contiguous, urbanized territory under subsection (b). When defining "subdivision" from subsection (b)(2)(B), we pay heed to the legislative intent that subsection (b) permit a municipality to annex only contiguous, urbanized territory.

Elkhart urges this court to define subdivided as follows: "to divide a part into smaller parts; to separate into small divisions." BLACK'S LAW DICTIONARY 1424 (6th ed. 1991). We reject this definition out of hand as it would make subsections (b)(2)(A) and (C) mere surplusage as almost every tract of land in Indiana would meet the criteria of subsection (b)(2)(B). *See Hinshaw v. Board of Com'rs of Jay County* (1993), Ind., 611 N.E.2d 637, 638 (courts presume legislature did not intend to create surplusage). Further, this definition would, contrary to the intent of subsection (b), allow annexation of land which is clearly not urban.

■ Next, we are asked to define subdivided according to the definition of "subdivision" set out later in the same title, to wit:

the division of a parcel of land into lots, parcels, tracts, units, or interests in the manner defined and prescribed by a subdivision control ordinance adopted by the legislative body under IC 36–7–4.

I.C. 36–7–1–19. The chapter referred to, I.C. 36–7–4, is labeled "Local Planning and Zoning." Relevant to our inquiry, the seven-hundred series of this Chapter concerns local subdivision control. I.C. 36–7–4–700 *et seq.* This series outlines the adoption of a local subdivision control ordinance and establish-

---

1. For purposes of subsection (b), "contiguous" means one-eighth of the territory's external boundaries coincide with the municipality's boundaries. I.C. 36–4–3–1.5.

2. For example, nearby nonresidents use city streets, police force, and fire protection without paying for these services and the accompanying infrastructure. *See* Reynolds, *supra,* at 253.

ment of a plat committee to oversee compliance with that ordinance.

We accept this definition and conclude that a subdivided parcel is one which complies with a local subdivision control ordinance pursuant to I.C. 36–7–4–700 *et. seq.* Our decision is consistent with the purpose of subsection (b) that the territory evidence an urban character. Having accepted that subdivided means land divided pursuant to a local subdivision control ordinance, we examine Elkhart County's local ordinance.

Elkhart County's subdivision control ordinance defines "subdivision" as follows:

> SUBDIVISION. A division or redivision of land in which two (2) or more parcels, lots or sites are established for residential or business purposes and any one (1) of these parcels, lots or sites are less than (3) acres in area, which may include a public way through the tract of land. A division or redivision of land is not a subdivision if:
>
> 1. The sale or exchange of parcels of land to or between adjoining property owners where those sales or exchanges does not create additional building lots, or
>
> 2. A court orders the division of land, or
>
> 3. A parent transfers adjacent land to a child.

ELKHART COUNTY, IN., SUBDIVISION ORDINANCE, art. 2 § 1(n), Record, p. 562. Based on this definition, Elkhart argues that any territory which is divided so as to create a smaller parcel less than three acres is subdivided for purposes of subsection (b)(2)(B).

We disagree. Considering a parcel as subdivided when a small lot is carved out is inconsistent with the purpose of the statute and has no logical connection to annexation. This construction would also violate the purpose of subsection (b) that the territory evidence an urban character. Under this construction, for example, a six-hundred-acre parcel of farm land of which one three-acre plot is sold to another for farming would be subdivided and, therefore, all six-hundred

acres subject to annexation as urban land under subsection (b).

On the contrary, to qualify as subdivided, a parcel must meet the requirements of I.C. 36–7–4–700 *et. seq.;* that is, the parcel must be actually recorded pursuant to a local subdivision control ordinance. *See* I.C. 36–7–1–19; SUBDIVISION ORDINANCE, art. 3 § 3, Record, p. 562. This assures that the territory is not simply divided, but meets zoning, set off, utility, and other requirements of urban land, thus furthering the intent of subsection (b) that annexed territory already have an urban character or reflect the immediate likelihood of urbanization. *See* Reynolds, at 276–277.

Therefore, the above definition only triggers operation of the local ordinance; the county plan commission must also approve a subdivided parcel. *See* I.C. 36–7–4–701(c), –702(a). Approval is gained after submission of a subdivision application, a hearing, and satisfaction of the established requirements. *See* I.C. 36–7–4–702(a), –703, –706. In Elkhart County, the parcel must meet zoning requirements, grant utility easements, have appropriate drainage and set offs, etc. SUBDIVISION ORDINANCE, art. 7 § 1, Record, pp. 566–567. The approval of a subdivision requires that it be platted[3] so as to indicate lot areas, public ways, and the extension of municipal services. *Id.;* I.C. 36–7–4–702(b). A platted and approved parcel is particularly appropriate for annexation because, as stated by the Indiana Supreme Court:

> The mere fact of platting, taken by itself, is rather a circumstance looking to annexation. It is an attempt to impress upon the territory an urban character, and is, in so far, an expression of consent to annexation.... In other words, the reasons in favor of annexing such attempted plats of lots are greater than those in favor of annexing unplatted lands themselves.

*Forsyth et al. v. The City of Hammond* (1895), 142 Ind. 505, 509–510, 40 N.E. 267, 268–269.

---

3. A plat is a "map of specific land area such as a ... subdivision showing the location and boundaries of individual parcels of land subdivided into lots with streets, alleys, easements, etc., usually drawn to a scale." BLACK'S, *supra*, at 1150.

Elkhart did not offer sufficient evidence of compliance with Elkhart County and Indiana subdivision control laws. Therefore, the trial court erred in concluding that the evidence demonstrates that the 439 acres is sufficiently subdivided to allow annexation.

## II.

### Zoning

■ Remonstrators next argue that the trial court erred in determining that the evidence supported a finding that the 439 acres were zoned for commercial, business, or industrial uses. They argue that, because seven percent of the area is zoned for residential purposes, the 439 acres do not satisfy the requirement.

The trial court held that the 439 acres satisfied the zoning requirement by substantial zoning for commercial business, or industrial uses. We disagree.

■ The statute requires that the area "is zoned for commercial, business, or industrial uses." I.C. 36–4–3–13(b)(2)(C). Thus, the trial court's holding violates the plain language of the statute which does not allow annexation where the area is only primarily urban zoned. *See Firth, supra* (statutory language given plain meaning). While we agree that residential zoning in a territory is subject to a *de minimis* analysis at some point, we disagree that seven percent residential zoning, in the context of this statute, is *de minimis.*

Elkhart counters that this conclusion encourages municipalities to establish non-city-residential islands within city limits. While Elkhart might be correct, the plain language of the statute compels our conclusion; had the legislature intended to require only a certain portion of the area to be urban zoned, it could have done so. Further, total urban zoning reflects urbanization consistent with the purpose of subsection (b). Also, the statute includes other means of annexing non-city islands. *See* I.C. 36–4–3–13(c). As such, we find Elkhart's argument unpersuasive.

For these reasons, we conclude that the trial court erred in approving the annexation of the 439 acres as Elkhart has not presented sufficient evidence to satisfy the requirements of subsection (b)(2).

Reversed.

FRIEDLANDER, J., concurs.

GARRARD, J., concurs in result and files separate opinion.

GARRARD, Judge, concurring in result.

I concur in the result reached. As stated by the majority, the question before us is whether, under the evidence presented, the city complied with the requirements of either IC 36–4–3–13(b)(2)(B) or (C). Admittedly the annexed area did not have the population density required by subsection (b)(2)(A).

Furthermore, the city expressly advised the court and remonstrators that it was not making any claim under IC 36–4–3–13(c) which permits annexation where ¼ of the area is contiguous to the city and the "territory ... is needed and can be used by the municipality for its development in the reasonably near future." Since no claim under (c) was litigated by the parties, the city is bound by its disclaimer on appeal.

The trial court determined that the annexation met the requirements of subsection (B) which requires that sixty percent (60%) of the territory is subdivided. The issue presented by this finding is the appropriate meaning of the term "subdivided".

The city would have us adopt the definition used in its subdivision control ordinance. That ordinance, in order to acquire maximum jurisdiction over the division of land by landowners within its area of operation, defines subdivision as "any division or redivision of land in which two (2) or more parcels ... are established for residential or business purposes and any one (1) of these parcels ... [is] less than three acres in area...."

While that definition may be an appropriate jurisdictional yardstick, it certainly does not meet the "urban character" analysis discussed by the majority and which has been an ongoing part of the courts' analysis in annexation matters. On the other hand, neither do I accept the majority's definition that as used in the annexation statute the term "subdivided" should be limited to "land divid-

ed pursuant to a local subdivision control ordinance" (op. at 597) or a parcel "actually recorded pursuant to a local subdivision control ordinance." (op. at 597). It seems to me that the ordinary meaning of the term as used in the annexation statute is to refer to land that has been platted into a subdivision of lots, and that is so whether or not the subdivision was accomplished under a subdivision control ordinance and whether or not the plat has been recorded—so long as the lots have been created and conveyed as such.

Applying that definition, it does not appear that sixty percent of the annexed area was subdivided. Accordingly, the court's finding was contrary to law.

Subsection (C) permits annexation where "[t]he territory is zoned for commercial, business, or industrial uses." Again, admittedly, approximately 7%, consisting of about 29 acres, was zoned for residential purposes. I agree with the majority that (C) requires the entire area in question to be zoned for commercial, business or industrial uses. Therefore, the court's finding that the requirements of (C) were met cannot stand.

Nor will the statute admit to some notion of tacking the requirements for one area to the requirements for another to create some amorphous whole. When the various enabling provisions of IC 36-4-3-13 are considered together, municipalities are given a broad range for annexing necessary and desirable areas. On the other hand, the language employed plainly renders the various provisions mutually exclusive. Furthermore, IC 36-4-3-11 preserves the right of landowners to remonstrate against annexation. Their rights to do so might be seriously impaired if a municipality could alter the potential for a sufficient remonstrance merely by tacking an area under one subsection to areas under other subsections.

I therefore concur in the result reached.