632 N.E.2d 752 (1994)
In re the TERMINATION OF PARENTAL RIGHTS of V.A., R.K., and S.K.
Diana Knott, Appellant-Respondent,
v.
TIPPECANOE COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee-Petitioner.
No. 79A02-9305-JV-251.
Court of Appeals of Indiana, Second District.
April 13, 1994.
*754 Michael B. Troemel, Merritt, Troemel, Meyer & Hamilton, Lafayette, for appellant.
Keith R. Fafarman, Gambs, Mucker, Bauman & Seeger, Lafayette, for appellee.
KIRSCH, Judge.

STATEMENT OF THE CASE
Diana Knott appeals an order of the Tippecanoe Superior Court III terminating her parental rights in her daughters, R.K. and S.K. Diana specifies a single issue for review: Whether there was sufficient evidence to support the trial court's judgment terminating Diana's parental rights.
We affirm.

FACTS
Diana is the mother of V.A., born April 22, 1980, R.K., born December 2, 1986, and S.K., born January 21, 1988. This action was commenced by the Tippecanoe County Department of Public Welfare (DPW) following extended investigations of Diana's home and parenting abilities.
The first DPW investigations occurred in May, 1984. At that time, DPW investigated allegations that Diana's oldest daughter, V.A., was wandering around without adult supervision and had been sexually molested by other children. Diana had not been aware of the incidents of abuse prior to DPW's investigation. DPW confirmed that V.A. had been sexually abused and had been frequently left without any supervision. DPW's caseworkers also reported filthy living conditions in the family's rented trailer. DPW began providing homemaking education services to Diana during this period in an attempt to improve her housekeeping skills.
In response to another report, DPW again visited Diana's trailer in November 1988. At that time all three of Diana's children were sick, and the residence was filthy and mouse infested. The children were temporarily removed from their mother's custody. In 1989, the children were found to be Children in Need of Services under IC 31-6-4-1 et seq. A nunc pro tunc dispositional decree removing all three children from Diana's custody was entered on November 3, 1989, effective June 7, 1989. The children were placed in a foster home by order of December 5, 1989 and remained in a foster home through the date of the termination hearing.
Initially, DPW planned to reunite Diana with her children, and provided individual and family therapy, in addition to the homemaker education, to accomplish that goal. The homemaker education services were not successful. When Diana vacated her rental trailer in April 1989, it was not habitable due to its filthy condition. She also still had problems supervising her children.
After the children were removed from her custody, Diana and her daughters attended therapy sessions conducted by Dr. Elizabeth Akey, a clinical psychologist with Wabash Valley Hospital. Dr. Akey concluded that R.K. and S.K. needed a more structured environment than their mother could provide, but that it would be best for V.A. to remain with her mother.
DPW also referred Diana to another psychologist, Dr. Dixie Pederson, for a psychological assessment. The results of this assessment indicated that Diana's ability to parent her children safely and without supervision was highly questionable and concluded that Diana was not receptive to efforts to improve her parenting ability.
On October 28, 1991 DPW filed a petition to terminate Diana's parental rights in the three girls. It subsequently dismissed its petition in regard to V.A. Following an evidentiary hearing, DPW's petition for termination regarding R.K. and S.K. was granted. This appeal followed.

DISCUSSION AND DECISION

I

Standard of Review
IC 31-6-5-4.3 requires that the trial court find the truth of the necessary allegations of IC 31-6-5-4(c) before it may terminate the parent-child relationship, but does not require that the court make specific findings as contemplated in Ind.Trial Rule 52(A). In this case, although neither of the parties *755 requested findings pursuant to T.R. 52(A), the trial court set forth specific findings in its termination order.
Because specific findings of fact were not mandated, the trial court's judgment may be affirmed upon any theory supported by the facts in the record. Forum Group, Inc. v. McMichael (1991), Ind. App., 575 N.E.2d 308, 310. This court will not reweigh the evidence, nor attempt to judge the credibility of the witnesses. Instead, we will consider only the evidence and reasonable inferences favorable to the trial court's judgment, and we will affirm the judgment if it is supported by that evidence and those inferences. In the Matter of the Adoption of D.V.H. (1992), Ind. App., 604 N.E.2d 634, 637, trans. denied.

II

Absence of Reasonable Probability That Conditions Will be Remedied
Parents have a fundamental liberty interest in the care, custody and management of their children. Santosky v. Kramer, 455 U.S. 745, 752-55, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599 (1982). This parental right is protected by Ind. Const. art. I, § 12. It also is protected by the Fourteenth Amendment to the United States Constitution. D.V.H., 604 N.E.2d at 636. Parental rights are not absolute and must be subordinated to the child's interests when deciding whether to terminate parental rights pursuant to IC 31-6-5-4. Shaw v. Shelby County Dep't of Pub. Welfare (1992), Ind. App., 584 N.E.2d 595, 601.
To terminate a parent-child relationship pursuant to IC 31-6-5-4(c),[1] the DPW must present clear and convincing evidence of the following four elements:
"(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(2) there is a reasonable probability that:
(A) the conditions that resulted in the child's removal will not be remedied; or
(B) the continuation of the parent-child relationship poses a threat to the well-being of the child;
(3) termination is in the best interests of the child; and
(4) there is a satisfactory plan for the care and treatment of the child."
In the Matter of Tucker (1991), Ind. App., 578 N.E.2d 774, 776, trans. denied.
The trial court found that Diana's parental rights in R.K. and S.K. should be terminated; that R.K. and S.K. were removed from their parents' legal care and custody under a dispositional decree on a date more than six months before the termination; that there was a reasonable probability that the conditions which resulted in the removal of R.K. and S.K. would not be remedied; that termination of parental rights was in the best interest of R.K. and S.K.; and that there was a satisfactory plan for the care and treatment of R.K. and S.K.[2]
Diana does not dispute that there was sufficient evidence of the first and fourth statutory elements: that her children had been removed from her, pursuant to a dispositional decree, for at least six months at the time of the termination hearing and that DPW proposed a satisfactory plan for the care and treatment of R.K. and S.K. She does dispute the sufficiency of evidence of the two parts of the second element: that the conditions resulting in the removal of the children would probably not be remedied and that the parent-child relationship posed a danger to the children's well-being. Finally, she inferentially disputes the sufficiency of evidence of the third element of the statute: that termination is in the best interests of *756 the child.[3]
The termination statute requires DPW to demonstrate a reasonable probability that either the conditions that resulted in the child's removal will not be remedied or that the condition of the parent-child relationship poses a threat to the well-being of the child. The trial court specifically found that there was a reasonable probability that the conditions which resulted in the removal of the children would not be remedied, and there is sufficient evidence in the record supporting the trial court's conclusion. It was not necessary for DPW to prove or for the trial court to find that the continuation of the parent-child relationship posed a threat to the children.
The trial court should judge a parent's fitness to care for children as of the time of the termination hearing, taking into consideration evidence of changed conditions. J.K.C. v. Fountain County Dep't of Pub. Welfare (1984), Ind. App., 470 N.E.2d 88, 91-92. To determine whether there is a reasonable probability that the conditions which resulted in the removal of the children would not be remedied, that court must consider the parent's habitual patterns of conduct to determine whether there was a substantial probability of future neglect or deprivation of the children. Id.
The most serious deficiencies in Diana's ability to care for her two youngest daughters were her failures to supervise her daughters and to provide them with a clean, safe and stable home. The evidence at trial, both expert opinion and testimony regarding actual incidents, was that Diana was consistently unable to supervise more than one of her daughters at a time. She had not improved in this area in spite of the therapy, and neither Dr. Akey, nor Dr. Pederson, thought it likely that her ability to parent her children would improve. Diana's inability to supervise her daughters was observed in therapy sessions and during her visits with her daughters at their foster home. Although Diana had incentive to demonstrate improvement in both situations and such situations provided less stress and complication than would routinely occur in her day-to-day life, she failed to do so.
Problems with cleanliness and safety in Diana's home had also been a constant concern of DPW during its involvement with the family. In April 1989, when she vacated the rental trailer in which she and her daughters had lived, the condition of the trailer was described by its owner as uninhabitable. DPW's caseworkers over the years frequently described Diana's various homes as unclean or filthy. These problems raised particular concerns in regard to the youngest daughter, S.K. While still in Diana's custody, S.K. had an operation to remove one of her eyes and replace it with an artificial one. The artificial eye had to be periodically removed and cleaned or the socket would become infected. S.K.'s foster father testified that S.K. had returned from visits with Diana with her eye "massively" infected.
Reviewing the evidence of Diana's habitual patterns of conduct and the expert testimony that she was unlikely to improve, we conclude that there was sufficient evidence from which the trial court could find there was no reasonable probability that the circumstances which led to the removal of Diana's daughters would improve.

III

Termination is in the Best Interests of the Children
The right of parents to raise their children should not be terminated solely because there is a better home available for the children. It is the inadequacy of parental custody and not the superiority of an available alternative that determines whether parental rights should be terminated. Tucker, 578 N.E.2d at 778.
The children were originally taken from Diana's custody because of her inability to supervise or provide a clean, safe home for them. Evidence at the termination hearing established that, despite DPW's and her own best efforts, Diana's parenting abilities had not significantly improved since the children had been removed. Both Dr. Akey and Dr. *757 Pederson concluded that Diana could not adequately function as parent for R.K. or S.K. and that it was not likely she would be able to do so in the foreseeable future. Diana's historical and present inability to provide her children with adequate housing, stability and supervision supports the trial court's finding that the best interests of R.K. and S.K. would be served by the termination of the parental rights of their mother.

IV

DPW's Failure to Seek Termination of Rights as to All Children
Diana states that: "The court found that Diana Knott's parental rights should be terminated as to her two (2) younger children despite the fact that the Department chose not to pursue a termination as to Diana's oldest child, [V.A.]." Appellant's Brief, p. 6.
In In the Matter of M.J.G. (1989), Ind. App., 542 N.E.2d 1385, 1388-89, this court held that termination of parental rights for three children, while allowing one to remain, was not contradictory where their mother appeared unable to handle the stress of more than one child in the home. Here, Dr. Akey testified that Diana's parental rights should be terminated in R.K. and S.K., but that V.A. should remain with her mother. The Doctor felt that the two younger girls needed a stable home life that Diana was not able to provide, but that Diana would be able to take care of the oldest girl, V.A. Further, the Doctor testified that permanently removing V.A. from her mother would have a lasting negative effect upon the older girl, while the younger daughters would more easily adjust to permanent separation from Diana.
DPW's election to not seek termination of Diana's parental rights in V.A. was clearly supported by evidence introduced at the termination hearing. DPW's different treatment of the differently situated children is not contradictory and is not grounds to vacate the trial court's termination of Diana's parental rights.

IV

Change in Indiana Law
In addition to her claim that the evidence was not sufficient to support the trial court's decision, Diana "advocates a change in Indiana law whereby the Department should be required to place children back with their custodial parent under strictly monitored conditions prior to proceeding to a termination trial." Appellant's Brief at 10. Diana is asking this court to add an additional requirement to termination proceedings. Such a requirement is not constitutionally mandated, and the proper forum for requesting such a change in the law is not this court, but the Indiana General Assembly. Schwartzkopf v. State (1965), 246 Ind. 201, 206, 204 N.E.2d 342, 345.
Judgment affirmed.
SHARPNACK, C.J., and FRIEDLANDER, J., concur.
NOTES
[1] IC 31-6-5-4 has been subsequently amended.
[2] In its order, the trial court also set forth two negative findings: "[I]t was never determined they [R.K. and S.K.] could safely return to her [Diana's] care." and "[T]here is no evidence that [Diana] will ever be able to care for her children [R.K. and S.K.]... ." These statements imply that Diana had the burden of proof on such issues. She did not.

Because the trial court's specific findings encompass the four elements of the statute, we treat these negative findings as surplusage.
[3] The sufficiency of evidence as to this issue is discussed below.