## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 03 2016, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jill M. Acklin
McGrath, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of:

Z.S. (Minor Child)

and

M.S. (Mother),

*Appellant-Repondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

March 3, 2016

Court of Appeals Case No.
49A02-1507-JT-951

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge
The Honorable Larry E. Bradley, Magistrate

Trial Court Cause No.
49D09-1502-JT-55

**Baker, Judge.**

[1] M.S. (Mother) appeals the judgment of the juvenile court terminating her parental rights as to her son, Z.S. (Child). Finding that the juvenile court's judgment is supported by sufficient evidence, we affirm.

# Facts

[2] Child was born on January 14, 2013. He was diagnosed with isovaleric acidemia and septo-optic dysplasia.[1] As a result of these conditions, Child suffers a serious visual impairment and could suffer seizures, coma, or death if he is not closely monitored and kept to a strict, prescribed diet. On January 24, 2013, after only a few days in Mother's care, Child had become gravely ill, forcing Mother to return him to the hospital where he was kept in an intensive care unit. Hospital staff determined that Child could not be fed by mouth and that Mother would need to be trained to prepare a formula that Child could ingest through a tube in his nose.

[3] On February 21, 2013, the Indiana Department of Child Services (DCS) removed Child from Mother's care and filed a petition in the juvenile court alleging that Child was a child in need of services (CHINS). The juvenile court held a fact-finding hearing on June 3, 2013, and soon thereafter issued an order

---

[1] The record indicates that isovaleric acidemia is a genetic condition that makes it hard for Child's body to break down proteins and that septo-optic dysplasia is a condition characterized by underdevelopment of the optic nerve and abnormal formation of structures along the midline of the brain. Appellee's Br. p. 8 n.4-5.

adjudicating Child a CHINS. On July 8, 2013, the juvenile court held a dispositional hearing at which Mother failed to appear but was represented by counsel. The juvenile court ordered Mother to participate in home-based counseling, follow all directions from medical professionals, attend all medical appointments, give all medication to Child as prescribed, and meet with a home health care nurse.

[4] On February 3, 2015, DCS filed a verified petition for the involuntary termination of Mother's parental rights as to Child. The juvenile court held an evidentiary hearing on July 2, 2015, at which Mother again failed to appear but was represented by counsel. On July 7, 2015, the juvenile court entered an order terminating Mother's parental rights as to Child.[2] The juvenile court noted that two attempts had been made to train Mother to meet Child's needs but that Mother had failed to demonstrate a level of proficiency that would allow doctors to believe it was safe for Child to be alone in her care. The juvenile court also noted that Mother had attended only one of Child's medical appointments in the one-and-a-half years that Child had been out of her care, she had not completed home-based counseling, she lacked suitable housing, and she had periodically stated that she wished for Child to be adopted. Mother now appeals.

---

[2] Shortly before Mother's parental rights were terminated, the juvenile court issued an order terminating the parental rights of Child's alleged father. The alleged father does not appeal this decision.

# Discussion and Decision

When reviewing a juvenile court's decision to terminate parental rights, we do not reweigh the evidence or judge the credibility of the witnesses. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We consider only the evidence and the reasonable inferences drawn therefrom that support the judgment. *Id.* Where a trial court has entered findings of fact and conclusions of law, we consider whether the evidence clearly and convincingly supports the findings and whether the findings clearly and convincingly support the judgment. *Id.* at 1230.

Our termination statute requires that a petition to terminate a parent's parental rights must allege, among other things:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4.  DCS bears the burden of proving these allegations by clear and convincing evidence.  Ind. Code § 31-37-14-2.

[7] Mother argues that the juvenile court's conclusion that termination is in Child's best interests is clearly erroneous.  She points to the juvenile court's finding that

> Termination would allow [Child] to be adopted by his incredible caretakers who will provide him with a safe and loving environment where all his needs will be met and where he will continue to progress.

Appellant's App. p. 10-11.  Mother argues that this statement "runs afoul of the principle that the termination decision must not be made based upon the superiority of available alternatives."  Appellant's Br. p. 8 (quotations omitted).

[8] Mother is correct to note this Court's holding that "[t]he rights of parents to raise their children should not be terminated solely because there is a better home available for the children."  *In re V.A.*, 632 N.E.2d 752, 756 (Ind. Ct. App. 1994).  We went on to note that "[i]t is the inadequacy of parental custody and not the superiority of an available alternative that determines whether parental rights should be terminated."  *Id.*

[9] It cannot be said that the termination at issue here was based solely on the superiority of an available alternative.  DCS presented ample evidence that Child's needs would not be met if he were to remain in Mother's care regardless

of any alternative. Child's medical conditions require his caretaker to be familiar with special techniques. Mother was given multiple opportunities to learn these techniques but she failed to demonstrate proficiency and, on at least one occasion, got upset and left. Appellant's App. p. 10. Furthermore, Mother did not follow the instructions given to her by the juvenile court. She attended only one of Child's medical appointments and failed to complete home-based counseling. Mother's failure to visit Child regularly resulted in her foregoing an additional opportunity to receive this training from a home health care nurse. In fact, Mother only visited Child four or five times in the two years since his removal. From this, the juvenile court could conclude that Mother had little interest in learning the techniques necessary to provide Child with the care he requires and that Child's needs would go unmet were he to remain in Mother's care. Given the severity of Child's medical conditions, his very survival may be threatened were he not to receive constant and proper care. Under these circumstances, the juvenile court was certainly within its discretion to conclude that termination was in his best interests.[3]

---

[3] In *In re S.D.*, 2 N.E.3d 1283 (Ind. 2014), a juvenile court determined that a child was a CHINS, in part because the child's mother had failed to complete home-care medical training which would allow her to properly care for the child. Our Supreme Court reversed that determination, observing that the mother's failure to complete the home-care medical training appeared "as much a *product of* DCS's intervention as it is a sign of her *need* for that intervention." *Id.* at 1289 (emphases original). The Court concluded that mother's child was only one step away from coming home from the hospital and there was no evidence that Mother could not have completed the necessary training if given a little more time. *Id.* The case before us now is plainly distinguishable in that, here, DCS has given Mother multiple opportunities to complete the required training, and her failure to complete it was not attributable to DCS or a simple lack of time, but rather to a lack of initiative and effort on Mother's part.

[10] The judgment of the juvenile court is affirmed.

Bradford, J., and Pyle, J., concur.